UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. B.,<br>    Plaintiff,<br>  v.<br>G6 HOSPITALITY, LLC, et al.,<br>    Defendants. | Case No. 19-cv-07848-HSG<br>**ORDER GRANTING MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 41, 95 |

  Plaintiff J.B., a survivor of sex trafficking, brings this action for damages against Defendants G6 Hospitality LLC (owner of Motel 6), Red Lion Hotels Corporation (owner of Economy Inn and now operating as America's Best Value Inn), Sarkar, LLC (doing business as the former Budget Inn, now Piedmont Inn), Kantilal Khatri and Rajeshkumar Khatri (sole proprietors of an Economy Inn), SRK Motel, Inc. (operator of Bay Breeze Inn), Mitchell Hotel Inc., Kalpesh K. Balsar (sole proprietor of the Sage Motel), Urmila Patel, Pushpa P. Patel, Gangaben A. Patel, Narendra T. Patel, and Ambalal P. Patel (sole proprietors of Holiday Motel), and East Bay Lodging, LLC (doing business as Mills Motel) (collectively "Defendant Motels"). Dkt. No. 1-2 ("Compl.") at ¶¶ 10–18. Plaintiff also names as Defendants Paul Zwimpfer, Linda R. Castaldo, Jaime R. Barcelona, and Remedios R. Barcelona (owners of Kairos Unlimited Counseling Services, hereinafter "Kairos") and Craigslist, Inc. *Id.* at ¶¶19–20.

  Plaintiff brings the following claims against all Defendants: beneficiary liability for participation in sex trafficking venture under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, beneficiary liability under California's Child Trafficking Victims Protection Act ("CTVPA"), Cal. Civ. Code § 52.5, negligence per se, and civil conspiracy. *Id.* at ¶¶ 131–41, 154–67. Against the Defendant Motels and Kairos, Plaintiff additionally alleges a negligence claim. *Id.* at ¶¶142–53. The parties have stipulated to dismiss

Defendants Red Lion Hotel Corporation (Dkt. No. 26), East Bay Lodging, LLC (Dkt. No. 85), and Mitchell Hotel (Dkt. No. 122).

Pending before the Court are Craigslist's motion to dismiss, Dkt. No. 41 ("CMot."), 69 ("COpp."), 70 ("CReply"), 86 ("Sur-Reply"), and Kantilal Khatri and Rajeshkumar Khatri's (DBA Economy Inn) ("Economy Inn") motion to dismiss, Dkt. No. 95 ("EMot."), 123 ("EOpp"), 124 ("EReply"). For the reasons discussed below, the Court **GRANTS** both motions.

## I. BACKGROUND

Plaintiff alleges that she was a "victim of child sex trafficking" and "advertised for sale on the Defendant Craigslist classified advertising website from 2007 to 2010." Compl. at ¶¶73, 75. Plaintiff alleges that "[b]etween 2007 and 2009, traffickers routinely purchased rooms in exchange for sex acts with minor J.B. and subsequently the motels and the buyers conspired to facilitate the selling of J.B. at motels throughout Oakland and Alameda County." *Id.* at ¶81.

Plaintiff broadly alleges that Defendant Motels knew that sex trafficking occurred frequently on their properties due to other news reports and incidents of child sex trafficking and still failed to prevent it. *See e.g.*, *id.* at ¶¶70–71. "The Defendants knew or should have known that J.B. was a minor on their premises or websites, without a parent or guardian, and with extreme prejudice for her race, age, and position in life Defendants conspired to profit from unknown male visitors who repeatedly assaulted minor, J.B." *Id.* at ¶76. Plaintiff points to several reasons that Defendant Motels should have known that Plaintiff was a victim of sex trafficking: "[u]nkown male guests would frequently pay for the rooms that J.B. . . . would stay in, and one night at a time they paid with cash and credit card for rooms," *id.* at ¶80; "[t]he rooms were frequently left with her clothing, numerous used condoms scattered across various surfaces and in complete disarray," *id.*; and "[t]he foot traffic to the rooms inhabited by minor J.B. became constant and voluminous," *id.* at ¶87. "Defendant Motels profited from the sex trafficking of J.B. and knowingly or negligently aided and participated with J.B.'s trafficker in his criminal venture. The Defendants took no action as J.B. repeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and exhibiting signs of malnourishment, and often displaying prominent bruising all over her person." *Id.* at ¶122.

Specifically, as to Economy Inn, Plaintiff alleges that she "experienced approximately 14 violent sexual assaults at Economy Inn between 2007 and 2011 by traffickers," and that "Economy Inn had a regular practice of accepting money and room rentals from commercial sex buyers, who would rent the rooms directly from the motel, in exchange for sexual acts with minor J.B." *Id.* at ¶¶99, 104.  She details several specific instances:

> Economy Inn in July 2007 was rented by an unknown male who knew that J.B. was a minor when he picked J.B. up on International Boulevard in Oakland. The Caucasian male drove J.B. to Economy Inn, where motel staff could of [sic] and should have witnessed her in the vehicle. The unknown male in his late 30's then went into the motel and purchased a room for approximately $50 to $60 for the night.
> . . .
> The first time J.B. was violently sexually assaulted at Economy Inn[,] she was 15 years old. An unknown adult male in his late 40's to mid 50's who was African American took J.B. minor [sic] to his room in plain sight of motel staff, and then told J.B. minor [sic] that he did not have a condom and [that] she would have to stay with him. When J.B. minor [sic] asked to go to the store, the unknown male postured himself in front of the door, holding her against her will. The unknown male then forced her into sexual acts and caused great bodily injury.
> . . .
> The next time J.B. recalls experiencing a violent sexual assault at Economy Inn occurred in the afternoon . . . in the parking lot . . . when J.B. was 16 years old[.] [A]n adult male who claimed to be a guest at the [motel] asked her to cover the car windows with clothing he had in the vehicle. The unknown male guest then pulled a gun on J.B. minor [sic] in a vehicle and forcibly raped J.B. causing her great bodily injury. The unknown male guest's vehicle was parked in an area that was monitored by Economy Inn and there was surveillance. J.B. minor [sic] did not ask for help because there was . . . commercial sex activity[,] minor victims[,] and traffickers . . . in the parking lot.
>
> J.B. was 17 years old when five (5) pimps busted down the door at an Economy Inn room and kidnapped her. The traffickers temporarily took her from Economy Inn[,] let her out on High Street[,] and told her to meet them back at Economy Inn after her first commercial sex act [and] to hand over the money. J.B. did not go back to the Economy Inn for 8 months after that incident and left all of her belongings, [including] clothing, shoes, make up, jewelry, and personal items in the room.
>
> On another occasion[,] a pimp hit J.B. in the head with an iron.

*Id.* at ¶¶98, 100–03.

Plaintiff also alleges that "Defendant Craigslist knew that its erotic services section was well known to commercial sex customers throughout the United States as a place to easily locate

3

victims for as commodities [sic], unpunished, anonymous, sexual abuse of children." *Id.* at ¶20(d). Craigslist should have known that the posts of Plaintiff involved child sex trafficking due to the "scantily clad and partially nude photographs of minor Plaintiff." *Id.* at ¶20. Instead, "Craigslist provided cover for advertisements of minors by requiring sex traffickers to click on the 'posting rules' page which has a line asserting 'I am at least 18 years of age or older and not considered to be a minor in my state of residence,'" even though "Craigslist did nothing to verify the actual age of the person being advertised" and did not take any "meaningful initiative to verify the actual identity of the posters." *Id.* at ¶20(f).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could

4

not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### III. CRAIGSLIST'S MOTION TO DISMISS

Craigslist argues that all claims brought by Plaintiff fail to state a cognizable claim against it. First, Craigslist argues that all state claims (participation in sex trafficking venture under the CTVPA, negligence per se, and civil conspiracy) fail as a matter of law because Section 230(c)(1) of the Communications Decency Act ("CDA") immunizes Craigslist from suit. CMot. at 4–11 (citing 47 U.S.C. § 230(c)(1)). Second, Craigslist contends that Plaintiff fails to allege a claim under the TVPRA since she cannot meet the *mens rea* requirement or show participation in a venture under Section 1595. *Id.* at 11–13. Finally, Craigslist argues that even if CDA immunity did not apply, the state claims should still be dismissed because Plaintiff fails to allege sufficient facts to establish each element. *Id.* at 14–17. The Court addresses each argument in turn.

#### A. CDA

Craigslist contends that it is immune from liability from any state law civil claims under Section 230(c) of the CDA. The CDA provides:

> (c) Protection for "Good Samaritan" blocking and screening of offensive material
> (1) Treatment of publisher or speaker
> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
> (e) Effect on other laws
> . . .
> (3) State law
> Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

47 U.S.C. § 230(c)(1), (e)(3). "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009), *as amended* (Sept. 28, 2009)).

5

Here, the Court agrees that Craigslist meets each of the three prongs of the test. First, an "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). As noted by the Ninth Circuit, "[t]oday, the most common interactive computer services are websites." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).

Under the second prong, despite Plaintiff's argument that "J.B. does not seek to treat Craigslist as a publisher or speaker," the allegations in the complaint clearly point to Craigslist's role as such. *See* Compl. at ¶5 ("Craigslist advertised the minor Plaintiff in the Craigslist designated categories of 'erotic services' and 'adult services.'"). Plaintiff's allegations that Craigslist itself advertised minor Plaintiff and benefitted from the dissemination of the advertisements form the basis of Plaintiff's CTVPA claim. The remaining state claims, negligence per se and civil conspiracy, rely on the same CTVPA allegations. While Plaintiff cites to *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850–51 (9th Cir. 2016), to argue that she does not claim Craigslist should be treated as a publisher or speaker, that case is inapposite. There, the Ninth Circuit addressed whether the failure to warn cause of action at issue required the court to treat defendant Internet Brands as a publisher or speaker, and determined that it did not. Unlike a failure to warn cause of action, Plaintiff's CTVPA allegations here point directly to Craigslist's role as a publisher of the advertisements displayed on the "erotic services" and "adult services" subsections on its website. Accordingly, the Court finds that the second prong is met.

Finally, Plaintiff alleges that she was "taught by another minor how to post pictures and create advertisements, which Craigslist would post online in the County of Alameda." *Id.* at ¶72. In other words, Plaintiff alleges that she created the posts, "which Craigslist would post online." *Id.* This sufficiently meets the final prong, and Defendant qualifies for immunity under Section 230(c)(1) of the CDA.

Importantly, in 2018, the CDA was amended by the Allow States and Victims to Fight Online Sex Trafficking Act of 2017. Pub. L. No. 115-164, 132 Stat. 1253 (2018). This law was the result of the Fight Online Sex Trafficking Act ("FOSTA") and Stop Enabling Sex Traffickers

6

Act ("SESTA") bills, and now is known as either "FOSTA" or "FOSTA-SESTA." "Congress passed [FOSTA] to narrow Section 230's scope and provide prosecutors with new tools to combat the sex trafficking of both minors and adults." *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 368 (D.C. Cir. 2020). "FOSTA narrowed the scope of immunity for interactive computer service providers, by providing that Section 230 has '[n]o effect on sex trafficking law,' and shall not 'be construed to impair or limit' civil claims brought under Section 1595 or criminal charges brought under state law if the underlying conduct would constitute a violation of Sections 1591 or 2421A." *Id.* (quoting 132 Stat. at 1254).

Although Plaintiff brings a civil claim under Section 1595 and puts sex trafficking laws at issue in this case, Craigslist argues that the FOSTA amendment to Section 230 does not affect its exemption from liability for state civil claims.[1] Whether such claims fall outside the scope of the immunity described by the CDA is a question of statutory interpretation, and the Court must begin with the plain language of the statute. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). If the language is ambiguous, the Court may look to "canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006).

Here, FOSTA's amendment of the CDA consisted of adding Section 230(e)(5):

> (5) No effect on sex trafficking law
> Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit--
> (A) any claim in a civil action brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title;
> (B) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of Title 18; or

---

[1] The Court disagrees with Plaintiff's late-raised characterization of Craigslist's argument as a preemption challenge. Sur-Reply at 1. This does not appear to be an accurate characterization of the argument, and even if it were, Congress expressed a clear intent to preclude certain state law claims through the immunity provided by the CDA. *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

> (C) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of Title 18, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

47 U.S.C. § 230(e)(5). As Defendants argue, none of the subsections exempts civil state claims. Instead, subsections (5)(A)–(C) exempt federal civil actions under Section 1595 of the TVPRA, as well as both state and federal criminal prosecutions, from immunity. "[W]here Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1184–85 (9th Cir. 2019) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). The plain language of the statute suggests that state civil claims are not carved out from the immunity provided by Section 230, even in sex trafficking cases.[2]

Plaintiff argues that the legislative history and purpose behind FOSTA make clear that state civil claims are carved out as well. *See* Opp. at 12 (citing H.R. Rep. No. 115-572 pt. 1 at 1 (2018) (noting that the amendment sought "to clarify that section 230 of such Act does not prohibit the enforcement against providers and users of interactive computer services of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking")). While it does appear Congress was concerned with the role that websites could play in facilitating sex trafficking, Plaintiff focuses on a House Committee Report discussing an earlier version of the statute. Significantly, "'[i]t is the business of Congress to sum up its own debates in its legislation,' and once it enacts a statute '[w]e do not inquire what the legislature meant; we ask only what the statute means.'" *Id.* (quoting *Schwegmann Brothers v. Calvert Distillers Corp.,* 341

---

[2] Plaintiff's citation to FOSTA's "sense of Congress" prefatory language and preamble does not change the Court's plain language finding. *See* Opp. at 12. First, the provision references "Federal and State criminal and civil claims" generally. *See* Pub. L. No. 115-164, § 2(1), 132 Stat. 1253 (2018). The statute then specifies which federal and which state claims are to be carved out from the CDA's immunity. *See id.* at § 4(a), 132 Stat. 1254. "[I]t is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992)). Second, "prefatory clauses or preambles cannot change the scope of [a statute's] operative clause." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1978–79 (2016).

1   U.S. 384, 396, 397 (1951) (Jackson, J., concurring)).

2   Still, even if the Court were to analyze these statements to discern congressional intent, it is not clear that Congress was concerned specifically with permitting civil claims under state law. For instance, when discussing the need to amend the CDA, the same Report explained that "[b]ecause of protections provided to 'interactive computer services' by the [CDA], it has been challenging to hold bad-actor websites accountable criminally (at the state level) and civilly." H.R. Rep. No. 115-572 pt. 1 at 3.  The Report specifically identifies impediments to criminal prosecutions at the state level, but does not similarly identify such concerns with state civil suits. Other than the sentence cited by Plaintiff, the Report consistently focuses on criminal accountability at the state level.  Thus, Plaintiff's citations to general statements in the legislative history do not clearly support her position that state civil claims were intended to be carved out from CDA immunity.

Plaintiff also argues that Section 230(e)(5) cannot be understood as an exhaustive list given that such a reading "would mean that the new federal civil cause of action created by FOSTA—Section 2421A—could never be used because it, too, is not listed in subsection (e)(5)." Sur-Reply at 3.  Section 2421A is a federal statute criminalizing the "[p]romotion or facilitation of prostitution and reckless disregard of sex trafficking." 18 U.S.C. § 2421A.  Federal criminal statutes have always been outside of Section 230's reach. *See* 47 U.S.C. § 230(e)(1) ("Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of Title 18, *or any other Federal criminal statute*.") (emphasis added).  Section 2421A(c) additionally provides a civil cause of action for "[a]ny person injured by reason of a violation of section 2421A(b)," permitting the "recover[y of] damages and reasonable attorneys' fees." 18 U.S.C. § 2421A(c).

Importantly, although the civil cause of action is not specifically listed in the CDA amendment, that provision was enacted at the same time as Section 230(e)(5).  The Court agrees that Congress could not have intended to exclude the new civil action created as part of the FOSTA legislation, but it does not follow that Section 230(e)(5)'s carve-out list should also be understood to include state civil claims.  State sex trafficking civil causes of action existed prior to

9

the amendment, and were specifically considered by Congress (as noted in the legislative history discussions cited above, *see* H.R. Rep. No. 115-572 pt. 1 at 1–3), but Congress ultimately ended up not including them in the amendment. On the other hand, Section 2421A(c) was passed contemporaneously, and the Court is not aware of any Congressional discussion or consideration of the new federal civil claim in the context of the CDA. Thus, Congress' decision not to list Section 2421A(c) (for whatever reason) does not undermine the conclusion that Section 230(e)(5) comprehensively sets out the scope of the intended immunity carve-out, at least as to state civil claims.

Finally, Plaintiff cursorily argues that the CDA's savings clause supports her argument that Section 230(e)(5)'s carve-out list is not exhaustive. *See* Sur-Reply at 3. The savings clause states that "Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section." 47 U.S.C. § 230(e)(3). Plaintiff thus assumes that the state civil claims at issue in this case are consistent with the CDA in arguing that "Congress did not need to add state civil claims to any 'list' of non-preempted claims in subsection (e)(5) because that exemption already existed in subsection (e)(3)." Sur-Reply at 3. Plaintiff provides no basis for this assumption, and does not support this argument with any facts or analysis. Instead, if the Court were to reach this issue, the state law as invoked here likely is inconsistent with the CDA's "Good Samaritan" protection because, as analyzed above, Plaintiff's CTVPA allegations necessarily treat Craigslist as a publisher or speaker and focus on posts comprised of information provided by third parties.

Given the clarity of the plain language of the amendment of the CDA, and the ambiguity of the legislative history relied upon by Plaintiff, the Court thus finds that the CDA does apply to state law civil sex trafficking claims.

Having found that Craigslist meets the three-prong test identified above, the Court turns to Plaintiff's final argument. Plaintiff argues that Craigslist falls within the exception to Section 230, contending that Craigslist acted as "an information content provider because it was 'responsible, in whole or in part, for the creation or development' of the 'information' at issue." COpp. at 13 n.10 (quoting 47 U.S.C. § 230(f)(3)). "A website operator can be both a service provider and a content

provider," but "[i]f it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content." *Roommates.Com*, 521 F.3d at 1162. To be a content provider, the website operator must "contribute[] materially to the alleged illegality of the conduct." *Id.* at 1168.

Plaintiff has pled no facts to support this argument. Instead, Plaintiff alleges that "she was enticed onto Craigslist and taught by another minor how to post pictures and create advertisements, which Craigslist would post online in the County of Alameda." Compl. at ¶72. The only role that Plaintiff attaches to Craigslist is that of a publisher of posts created by third parties. Plaintiff's allegation that "Craigslist provided cover for advertisements of minors by requiring sex traffickers to click on the 'posting rules' page which has a line asserting 'I am at least 18 years of age or older and not considered to be a minor in my state of residence,'" even though "Craigslist did nothing to verify the actual age of the person being advertised" or take any "meaningful initiative to verify the actual identity of the posters," does not change this conclusion. *Id.* at ¶20(f). Craigslist's requirement that a third-party creator of a post confirm that he or she is an adult does not support any inference of inducement or material contribution to the post. *See Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 969 (N.D. Ill. 2009) (finding that plaintiff's allegation that "users routinely flout Craigslist's guidelines" did not make Craigslist a content provider, because Craigslist did not cause users to post, "[o]r if it has, it is only 'in the sense that no one could post [unlawful content] if craigslist did not offer a forum.'") (quoting *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008), *as amended* (May 2, 2008)).

Accordingly, having found that (1) CDA immunity does apply to civil state law claims alleging sex trafficking, (2) Craigslist meets the three-prong test, and (3) the content provider exception does not apply, the Court **GRANTS** Craigslist's motion to dismiss the state law claims alleged against it **WITHOUT LEAVE TO AMEND**.

**B. TVPRA**

Craigslist also argues that Plaintiff has not sufficiently pled a violation of the TVPRA. Specifically, Section 1595 provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). To establish liability under Section 1595, Plaintiff must establish that (1) Craigslist knowingly benefited financially or by receiving anything of value (2) by participating in the sex trafficking venture (3) that Craigslist knew or should have known was a violation of the TVPRA. *See Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 19-cv-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) (listing similar requirements). Given that FOSTA specifically excluded any claim brought under Section 1595, the CDA does not apply to this claim and Craigslist is not entitled to immunity.

Craigslist argues that Plaintiff fails to state a claim under Section 1595 because she fails to plead facts showing that Craigslist knew or should have known that its participation supported the sex trafficking of J.B., that it participated in the venture, or that it knowingly benefited. CMot. at 11–13. Here, Plaintiff makes the following allegations:

> Upon information and belief, Defendant Craigslist knew that its erotic services section was well known to commercial sex customers throughout the United States as a place to easily locate victims for as commodities [sic], unpunished, anonymous, sexual abuse of children.
> . . .
> The Craigslist site facilitated [communication between] commercial sex buyers [and] sellers of commercial sex[,] including traffickers[,] through the use of an email [which allowed] seller[s] to remain anonymous and hidden while communicating through the Craigslist communication system.
> . . .
> Defendant Craigslist was on notice of the human sex trafficking, including that of children taking place on their website service from numerous sources, including but not limited to[:] lawsuits, government action, public outcry, news media, victims, activities and employee observation.
> Despite Defendant Craigslist's knowledge that its erotic services section was a forum for facilitating adult and child sex trafficking, they allowed such advertisements on their website for over 10 years. After growing pressure from the public and law enforcement, they created nominal, ineffective requirements that became instructions to sex traffickers on evading law enforcement. Defendant Craigslist developed these content requirements to maintain their benefit from their participation in illicit commercial sex. In May of 2009, Defendant Craigslist chose to re-label the erotic services to "adult services" but the forum functioned exactly the same. They later

12

> terminated the "adult services" section, but the commercial sex advertisements still flourished in the Craigslist personal ads and massage services sections. Finally, after 20 years of being a platform for sex trafficking, Defendant Craigslist decided to shut down their personal ads section in 2018, after the Fight Online Sex Trafficking Act (FOSTA) became federal law.

Compl. at ¶20(d), (h), (l)–(m).

Craigslist argues that Plaintiff has not adequately pled participation in the venture. "Participation in a venture" is not defined in Section 1595. In Section 1591, Congress defined the phrase as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). Although Craigslist argues this definition carries over to Section 1595, the Court disagrees. "The language of § 1591 differs from the language of § 1595—the former does not have a constructive knowledge element manifested by 'should have known' language." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019). To carry over § 1591's "participation in a venture" definition would impose a heightened *mens rea* standard inconsistent with the plain language of § 1595. *See id.*; *see also J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 3035794, at *1 n.1 (N.D. Cal. June 5, 2020); *but see Doe 1 v. Red Roof Inns, Inc.*, No. 19-cv-3840, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020); *Doe 2 v. Red Roof Inns, Inc.*, No. 19-cv-3841, 2020 WL 1872337 (N.D. Ga. Apr. 13, 2020); *Doe 3 v. Red Roof Inns, Inc.*, No. 19-cv-3843, 2020 WL 1872333 (N.D. Ga. Apr. 13, 2020); *Doe 4 v. Red Roof Inns, Inc.*, No. 19-cv-3845, 2020 WL 1872336 (N.D. Ga. Apr. 13, 2020) (applying § 1591's "participation in a venture" definition to the stand-alone § 1595 claim).

Other courts defining participation under § 1595 have, "in the absence of direct association," required "a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement." *See M.A.*, 425 F. Supp. 3d at 970; *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (finding participation properly pled where plaintiff alleged that "[trafficker] had prior commercial dealings with [defendants], which the parties wished to reinstate for profit."); *A.B. v. Marriott Int'l, Inc.*, No. 19-cv-5770, 2020 WL 1939678, at *16 (E.D. Pa. Apr. 22, 2020) (adopting the reasoning of *M.A. v. Wyndham Hotels & Resorts, Inc.* "at least as applied to a hotel where there is a direct connection between a rental fee

13

1  for the room where the trafficking is effected."). The Court agrees with this articulation of the
2  constructive knowledge requirement.

3  Analyzing participation under the tacit agreement standard, Plaintiff fails to adequately
4  allege this element. Plaintiff alleges that "[t]he [Craigslist] advertisements led to minor J.B. being
5  sex trafficked by traffickers and buyers through contacts that were initiated on the Craigslist
6  'erotic services' advertising section of their website." Compl. at ¶72. But an allegation of but-for
7  causation does not establish that Craigslist tacitly agreed to the sex trafficking of Plaintiff or
8  others. Plaintiff also alleges that "Defendant Craigslist knew that its erotic services section was
9  well known to commercial sex customers throughout the United States as a place to easily locate
10 victims for as commodities [sic], unpunished, anonymous, sexual abuse of children." *Id.* at
11 ¶20(d). However, this allegation necessarily suggests that Craigslist enters into tacit agreements
12 with all traffickers (or even all posters) that use its website, and there is no factual basis pled that
13 makes this claim plausible. To conclude otherwise would mean that "all web[-]based
14 communications platforms have a legal duty to inspect every single user-generated message before
15 it is communicated to a single person or displayed to the public," lest such platforms be deemed to
16 have participated in the venture. CReply at 12. The Court agrees with Craigslist that there is no
17 indication that Congress intended to create such a duty, or that it would be reasonable in light of
18 the volume of posts generated by third parties daily.[3]

19 The Court recognizes that there is some tension between the TVPRA's requirements and

---

[3] Craigslist also argues that under section 1595(a), "J.B. must show craigslist's actual or constructive knowledge of *her trafficking specifically*." CReply at 11 (emphasis in original). The Court is not sure it agrees with that proposition. The Court can envision a circumstance, for example, in which a website operator openly and knowingly makes a deal with sex traffickers to support the venture by posting advertisements featuring trafficked minors in exchange for a cut of the proceeds. In that situation, where the website is plainly participating in the trafficking venture, it seems entirely inconsistent with Congress's purpose in passing the statute to provide the website with a defense to a claim brought by a victim of the venture just because it did not know in advance the names or identities of the particular people who would end up being predictably victimized in this way. Craigslist's assertion that "it would be peculiar for Congress to allow a victim of sex trafficking to hold a defendant liable for acts involving some other trafficking venture injuring some other victim," CReply at 11, is unpersuasive: that problem can be dealt with through application of general principles of standing and causation. In the end, the Court need not decide this question now, because Plaintiff fails to plausibly plead Craigslist's participation in any venture at all.

14

FOSTA's general purpose. FOSTA's amendment of the CDA sought to make it easier to hold websites accountable. But the TVPRA's requirement that the defendant participate in a venture makes actions against websites such as Craigslist difficult to establish, given that such sites receive billions of posts and interaction with a specific venture may be hard to show. Importantly, however, Congress did not amend Section 1595 when it passed FOSTA, and the Court must interpret the TVPRA elements on their face. Because Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site, Plaintiff must allege facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff, and she has not done so.[4]

For these reasons, the Court **GRANTS** Craigslist's motion to dismiss the TVPRA claim **WITH LEAVE TO AMEND**.

## IV. ECONOMY INN'S MOTION TO DISMISS

### A. Timeliness

Plaintiff first objects to Defendant's motion as untimely. EOpp. at 2–3. According to Plaintiff, Economy Inn was required to respond to the Complaint by December 9, 2019, and thus should have sought leave to file its motion to dismiss under Federal Rule of Civil Procedure 6(b). *Id.* Importantly, however, the Ninth Circuit allows a Rule 12(b) motion to be filed any time before the responsive pleading is filed, and "the court may consider the defense of failure to state a claim at any time before trial." *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1118 (N.D. Cal. 2007); *see also Aetna Life Ins. Co. v. Alla Medical Services, Inc.,* 855 F.2d 1470, 1474 (9th Cir. 1988). Economy Inn has not yet filed an answer to the Complaint. Accordingly, the Court reaches the merits of Economy Inn's motion.

### B. Merits

Economy Inn argues that Plaintiff fails to allege sufficient facts to support her claims under the TVPRA or CTVPA, as well as her claims for negligence per se and civil conspiracy. *See*

---

[4] Because Plaintiff fails to plead that Craigslist participated in the trafficking venture, the Court need not reach Craigslist's additional arguments regarding the constructive knowledge of or knowing benefit from the same venture.

15

*generally* EMot.[5]

### i. TVPRA

Plaintiff alleges a beneficiary theory of liability as to all Defendant Motels, which requires Plaintiff to show that each Defendant knowingly benefited financially or by receiving anything of value, participated in the sex trafficking venture, and knew or should have known the venture violated the TVPRA. *See Doe S.W.*, 2020 WL 1244192 at *5. Plaintiff's allegations as to Economy Inn fall short of this standard.

Plaintiff describes instances when she was either in a car in the parking lot or in rented rooms to conclude that Economy Inn employees and managers should have been aware that she was being trafficked. These allegations are an insufficient basis to infer constructive knowledge of a trafficking venture when Plaintiff specifically notes that the car windows were covered up with clothes, and that she never sought help from Economy Inn staff. *See* Compl. at ¶¶98, 100–03. She never alleges that she saw or approached employees with or without her trafficker, but only that employees should have seen her when she was in the car or being taken into rooms. *Id.* Additionally, while Plaintiff alleges that she "left all of her belongings, clothing, shoes, make up, jewelry, and personal items in the room" after being kidnapped by her traffickers, she also alleges that she did not return to Economy Inn for over eight months. *Id.* at ¶102. Significantly, while Plaintiff's allegations suggest that Economy Inn quite possibly should have been aware of some nefarious conduct, they do not suggest that Economy Inn should have known that the venture constituted sex trafficking that violated the TVPRA.[6]

That these allegations fall short is clear by looking at the allegations made in cases in where courts have found constructive knowledge sufficiently pled. For example, in *M.A. v. Wyndham Hotels & Resorts, Inc.*, a sex trafficking victim specifically alleged that "while she was at each hotel property, 'the hotel staff would have or should have observed visible physical changes, such as bruising,' and that '[d]espite her desperate pleas and screams for help, after being

---

[5] Economy Inn does not move to dismiss Plaintiff's negligence claim.
[6] While paragraph 122 of the Complaint includes allegations regarding Plaintiff's appearance, these general allegations contain no facts differentiating what happened at various motels, and this paragraph includes defendants that have now been dismissed. *See* Compl. at ¶ 118.

16

1 beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to
2 prevent the ongoing and obvious torture she endured.'" 425 F. Supp. 3d at 962 (citation omitted).
3 Similarly, in *Ricchio v. McLean*, the First Circuit found significant "[alleged trafficker's] coercive
4 and brutal behavior to a physically deteriorating [plaintiff], who pleaded for help," as well as
5 interactions between the alleged trafficker and the hotel owner. 853 F.3d 553, 557 (1st Cir. 2017).
6 The Court does not suggest that the alleged facts must be this egregious to state a claim. Instead,
7 these cases highlight that allegations that the victim sought help and was seen by employees with
8 physical injuries or other facts suggesting coercion allow courts to infer that motel or hotel
9 employees should have known that human trafficking was occurring, as opposed to other criminal
10 conduct, such as prostitution.

Plaintiff fails to allege facts sufficient to show that Economy Inn employees were on notice that the actions taking place within the rooms or in the parking lot constituted trafficking. The Court therefore **GRANTS** Economy Inn's motion to dismiss the TVPRA claim **WITH LEAVE TO AMEND**.

### ii. CTVPA

A victim of human trafficking may bring a civil action for damages or injunctive relief under California Civil Code § 52.5. *See* Cal. Civ. Code § 52.5 ("A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief."). California's human trafficking statute in turn provides: "Any person who deprives or violates the personal liberty of another with the intent to . . . obtain forced labor or services, is guilty of human trafficking." Cal. Penal Code § 236.1(a).

The Complaint broadly alleges that Defendant Motels knew their premises were being used for sex trafficking enterprises and that "J.B. minor [sic] did not ask for help [at Economy Inn] because there was a lot of commercial sex activity and many minor victims and traffickers were in the parking lot." Compl. at ¶101. However, "[t]he CTVPA does not include negligent 'should have known' language as in the TVPRA; cases interpreting the CTVPA have required plaintiffs to plausibly allege intent at the pleading stage." *J.C.*, 2020 WL 3035794, at *2. Plaintiff has not

done so here, and the Court **GRANTS** Economy Inn's motion to dismiss the CTVPA claim **WITH LEAVE TO AMEND**.

### iii. Negligence Per se and Civil Conspiracy

Next, the Court agrees with Economy Inn that Plaintiff's claim for negligence per se must be dismissed outright. "[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." *Johnson v. Honeywell Internat. Inc.*, 101 Cal. Rptr. 3d 726, 731 (Cal. Ct. App. 2009) (quoting *Millard v. Biosources, Inc.*, 156 Cal. App. 4th 1338, 1353 n.2 (Cal. Ct. App. 2007)). Accordingly, the Court **GRANTS** Economy Inn's motion to dismiss the negligence per se claim **WITHOUT LEAVE TO AMEND**.

Finally, Economy Inn argues that Plaintiff's claim for civil conspiracy must be dismissed because Plaintiff similarly fails to adequately allege the intent element. EMot. at 9. To plead a claim for civil conspiracy, a plaintiff must allege the following elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 47 Cal. Rptr. 2d 752 (Cal. Ct. App. 1995). "The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective." *Id.* (quoting *Schick v. Lerner*, 238 Cal. Rptr. 902 (Cal. Ct. App. 1987)). Again, the Court agrees that the intent element is not met. Plaintiff alleges no specific facts to support her general conclusion that Economy Inn knew of the sex trafficking of minor Plaintiff J.B., and no facts supporting any specific intent to aid in such trafficking. Plaintiff's allegations that Defendant Motels benefited monetarily through room charges cannot alone show intent. The Court **GRANTS** Economy Inn's motion to dismiss the civil conspiracy claim **WITH LEAVE TO AMEND**.

## V. CONCLUSION

For the reasons noted above, the Court **GRANTS** Craigslist's motion to dismiss the state law claims **WITHOUT LEAVE TO AMEND**, finding that CDA immunity applies to civil state law actions. Additionally, the Court **GRANTS** Craigslist's motion as to the TVPRA claim **WITH**

**LEAVE TO AMEND**.

The Court also **GRANTS** Economy Inn's motion to dismiss Plaintiff's TVPRA, CTVPA, and civil conspiracy claims, **WITH LEAVE TO AMEND**, and negligence per se claim **WITHOUT LEAVE TO AMEND**.

Any amended complaint must be filed within twenty-eight (28) days of the date of this order. The amended complaint may not add any new parties or claims without leave of Court.

**IT IS SO ORDERED.**

Dated: 8/20/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge