1
2
3
4
5
6
7
8
9

LATHAM & WATKINS LLP
  Perry J. Viscounty (Bar No. 132143)
   *perry.viscounty@lw.com*
  Catherine Anne Rizzoni (Bar No. 322267)
   *cat.rizzoni@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
T:  +1.415.391.0600 / F: +1.415.395.8095

  Roman Martinez (*pro hac vice*)
   *roman.martinez@lw.com*
  Caroline Flynn (Bar No. 296691)
   *caroline.flynn@lw.com*
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
T:  +1.202.637.2200 / F: +1.202.637.2201

10
11

Attorneys for Defendant
craigslist, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J.B., an individual,<br><br>             Plaintiff,<br><br>   v.<br><br>G6 HOSPITALITY, LLC, et al.,<br><br>             Defendants. | CASE NO. 4:19-cv-07848-HSG<br><br>**CRAIGSLIST, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  December 17, 2020<br>Time:         2:00 p.m.<br>Place:        Courtroom 2<br>Judge:       Hon. Haywood S. Gilliam, Jr. |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

**PLEASE TAKE NOTICE** that on December 17, 2020, at 2:00 p.m., or as soon thereafter

4

as the matter may be heard, in the Ronald V. Dellums Federal Building, Courtroom 2, 4th floor,

5

1301 Clay Street, Oakland, California, before the Honorable Haywood S. Gilliam, Jr., Defendant

6

craigslist, Inc. ("craigslist") will, and hereby does, move the Court for an order dismissing

7

Plaintiff's claim against craigslist in Plaintiff's First Amended Complaint (Dkt. No. 134).  This

8

Motion is made on the grounds that Plaintiff's claim under 18 U.S.C. § 1595 (Count One) is barred

9

by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1), and otherwise

10

fails to state a claim on which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).

11

This Motion is based on this Notice and Motion, the accompanying Memorandum of Points

12

and Authorities, any reply memorandum, the First Amended Complaint, and such further evidence

13

and argument as the Court may consider.

14

Dated:  October 9, 2020                    LATHAM & WATKINS LLP

15

16

By  */s/ Perry J. Viscounty*
     Perry J. Viscounty

17

Attorneys for Defendant
craigslist, Inc.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................. 3

      A.    Facts ..................................................................................................... 3

      B.    Procedural History ............................................................................... 4

ARGUMENT ................................................................................................................. 5

I.     PLAINTIFF'S TVPRA CLAIM IS BARRED BY CDA SECTION
230(C)(1).................................................................................................. 6

II.    PLAINTIFF FAILS TO PLEAD FACTS SUPPORTING
NECESSARY ELEMENTS OF HER TVPRA CLAIM AGAINST
CRAIGSLIST ........................................................................................... 9

      A.    The FAC Does Not Allege That craigslist Participated In A
Venture With Plaintiff's Traffickers ................................................. 10

      B.    The FAC Does Not Allege That craigslist Participated In A
Venture With Plaintiff's Traffickers Specifically.................................. 16

      C.    The FAC Does Not Allege That craigslist Knowingly
Benefited From Plaintiff's Trafficking .............................................. 19

III.   PLAINTIFF CANNOT STATE A BENEFICIARY CLAIM
UNDER SECTION 1595 FOR ANY CONDUCT PRIOR TO
DECEMBER 23, 2008........................................................................... 20

CONCLUSION........................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.B. v. Hilton Worldwide Holdings Inc.*,
  No. 3:19-CV-01992-IM, 2020 WL 5371459 (D. Or. Sept. 8, 2020) .......................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................................6

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) ............................................................................................6

*Barrientos v. CoreCivic, Inc.*,
  332 F. Supp. 3d 1305 (M.D. Ga. 2018) ..............................................................................20

*Beaver v. Tarsadia Hotels*,
  816 F.3d 1170 (9th Cir. 2016) .......................................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................................5, 6

*Bistline v. Parker*,
  918 F.3d 849 (10th Cir. 2019) ...........................................................................................10

*Boyle v. United States*,
  556 U.S. 938 (2009) ..........................................................................................................11

*Dart v. Craigslist, Inc.*,
  665 F. Supp. 2d 961 (N.D. Ill. 2009) ...................................................................................3

*Ditullio v. Boehm*,
  662 F.3d 1091 (9th Cir. 2011) .......................................................................................21, 22

*Doe 4 v. Red Roof Inn, Inc.*,
  No. 1:19-cv-03845-WMR, 2020 WL 1872336 (N.D. Ga. Apr. 13, 2020) ...........................17

*Doe v. Kik Interactive, Inc.*,
  No. 20-60702-CIV, 2020 WL 5156641 (S.D. Fla. Aug. 31, 2020) .................................2, 7, 8

*Elat v. Ngoubene*,
  993 F. Supp. 2d 497 (D. Md. 2014) .....................................................................................21

*In re Facebook, Inc. Shareholder Derivative Privacy Litig.*,
  367 F. Supp. 3d 1108 (N.D. Cal. 2019) ..............................................................................15

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019) .................................................................................19

*H.G. v. Inter-Continental Hotels Corp*,
   No. 19-CV-13622, 2020 WL 5653304 (E.D. Mich. Sept. 23, 2020)......................................17

*Hughes Aircraft Co. v. United States*,
   520 U.S. 939 (1997).................................................................................................................21

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016).........................................................................................................6

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994)...................................................................................................2, 21, 22

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019) ..............................................................................5, 10

*M.L. v. craigslist Inc.*,
   No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020).............2, 7, 20, 22

*Opati v. Rep. of Sudan*,
   140 S. Ct. 1601 (2020)..........................................................................................................21, 23

*Owino v. CoreCivic, Inc.*,
   No. 17-cv-1112-JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018).....................20, 22

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
   839 F.3d 1 (D.C. Cir. 2016), *reinstated in relevant part on reh'g en banc*,
   881 F.3d 75 (D.C. Cir. 2018)......................................................................................................23

*Ratha v. Phatthana Seafood Co.*,
   No. CV 16-4271-JFW, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ...................................18

*Ray v. Spirit Airlines, Inc.*,
   836 F.3d 1340 (11th Cir. 2016) ................................................................................................11

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017).....................................................................................................10

*Rosemond v. United States*,
   572 U.S. 65 (2014)...........................................................................................................11, 15

*Rosner v. Bank of China*,
   528 F. Supp. 2d 419 (S.D.N.Y. 2007).......................................................................................11

*S.J. v. Choice Hotels Int'l, Inc.*,
   No. 19-CV-6071 (BMC), 2020 WL 4059569 (E.D.N.Y. July 20, 2020) ................................17

*United States v. Turkette*,
   452 U.S. 576 (1981)..................................................................................................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

CASE NO. 4:19-cv-07848-HSG
CRAIGSLIST'S MOTION TO DISMISS FAC

*Weir v. Cenlar FSB*,
    No. 16-CV-8650 (CS), 2018 WL 3443173 (S.D.N.Y. July 17, 2018) ....................................11

## STATUTES

18 U.S.C.
    § 1591........................................................................................................................*passim*
    § 1591(a)...........................................................................................................................9
    § 1591(a)(2).......................................................................................................................7
    § 1591(e)(4)...............................................................................................................7, 9, 10
    § 1591(e)(6).....................................................................................................................10
    § 1595........................................................................................................................*passim*

47 U.S.C.
    § 230..........................................................................................................................*passim*
    § 230(c)(1)..............................................................................................................4, 6, 7, 9
    § 230(c)(2).......................................................................................................................14
    § 230(e)(1).........................................................................................................................6
    § 230(e)(5)(A).......................................................................................................1, 7, 8, 9

Trafficking Victims Protection Reauthorization Act of 2003,
    Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875.........................................................21

Trafficking Victims Protection Reauthorization Act of 2008,
    Pub. L. No. 110-457, § 221, 122 Stat. 5044 ...................................................................21

Victims of Trafficking and Violence Protection Act of 2000,
    Pub. L. No. 106-386, 114 Stat. 1464 ..............................................................................21

## RULES

Fed. R. Civ. P. 12(b)(6).......................................................................................................5, 6

## OTHER AUTHORITIES

164 Cong. Rec. S1849 (daily ed. Mar. 21, 2018) ....................................................................8

H.R. Rep. No. 115-572, pt. 1 (2018)........................................................................................8

*Joint Venture*, Black's Law Dictionary (11th ed. 2019) .........................................................10

Kai Beech, *Craigslist Confidential:  A Recent Sting Puts the Spotlight on an Internet Red Light
    District*, New Times (Dec. 19, 2007), https://www.newtimesslo.com//craigslist-
    confidential/Content?oid=2948404 ................................................................................15

*Participation*, Black's Law Dictionary (11th ed. 2019) ..........................................................11

*Participation*, Oxford English Dictionary (3d ed. 2005)........................................................11

*Venture*, Black's Law Dictionary (11th ed. 2019)..................................................................10

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff J.B., who alleges she was a victim of sex trafficking between 2007 and 2011, asserts civil claims against defendant craigslist, Inc. ("craigslist"), based on the allegation that she was the subject of advertisements for commercial sex published on craigslist's classified advertising platform.  In her original complaint (Dkt. 1-2) ("Compl."), Plaintiff asserted a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, along with related state-law claims seeking to hold craigslist liable for the alleged misuse of its site.  In its first motion to dismiss (Dkt. 41), craigslist argued that Plaintiff's claims were barred by Section 230 of the Communications Decency Act ("CDA" or "Section 230"), 47 U.S.C. § 230, and that her claims also failed on the merits as a matter of law.

The Court agreed that Plaintiff's state-law claims were barred by Section 230 and dismissed those claims without leave to amend.  Order Granting Motions to Dismiss, Dkt. 132 at 5-11 ("Order").  The Court also dismissed Plaintiff's federal TVPRA claim for failure to state a claim, holding that the claim could only survive dismissal if Plaintiff could allege facts establishing "a continuous business relationship between the trafficker and [craigslist] such that it would appear that the trafficker and [craigslist] have established a pattern of conduct or could be said to have a tacit agreement."  Order at 13-14.  While emphasizing that "Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site," the Court nonetheless allowed Plaintiff to re-plead her TVPRA claim to "allege facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff."  *Id.* at 15.

Not surprisingly, Plaintiff's First Amended Complaint ("FAC") (Dkt. 134) still fails to allege a viable TVPRA beneficiary claim under 18 U.S.C. § 1595(a).  As it did before, the Court should dismiss the claim—this time with prejudice—for either of two independent reasons.

*First*, Section 230 bars the federal claim.  While Section 230 provides a narrow exception to immunity for a subset of claims brought under 18 U.S.C. § 1595, Plaintiff's claim does not qualify for this exception—because she does not and cannot allege that craigslist's conduct amounted to a violation of the TVPRA's criminal provision, 18 U.S.C. § 1591.  *See* 47 U.S.C. § 230(e)(5)(A).  Although the Court declined to dismiss the TVPRA claim on this basis when

1    ruling on craigslist's first motion to dismiss, craigslist respectfully asks the Court to reconsider the

2    issue, particularly in light of intervening rulings from other federal district courts.  *See Doe v. Kik*

3    *Interactive, Inc.*, No. 20-60702-CIV, 2020 WL 5156641, at *7 (S.D. Fla. Aug. 31, 2020); *M.L. v.*

4    *craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 5494903, at *4 (W.D. Wash. Sept. 11, 2020).

5    *Second*, the FAC fails to state a Section 1595 beneficiary claim against craigslist because

6    Plaintiff has not pleaded facts showing that craigslist "knowingly benefit[ed] . . . from

7    participation in a venture, which [craigslist] knew or should have known has engaged in an act in

8    violation of [18 U.S.C. § 1591]."  18 U.S.C. § 1595(a).  Plaintiff's largely repackaged allegations

9    still fall short of this Court's announced standard for finding craigslist's "participation in a

10   venture":  Plaintiff has not alleged the existence of "a continuous business relationship" between

11   craigslist and Plaintiff's traffickers "such that it would appear that the trafficker and [craigslist]

12   have established a pattern of conduct or could be said to have a tacit agreement" to engage in sex

13   trafficking.  Order at 13-14 (citation omitted).  Indeed, the FAC does not clearly allege *any*

14   interaction between craigslist and Plaintiff's traffickers at all.  Instead, Plaintiff once again relies

15   on allegations of craigslist's general awareness that third parties sometimes misused the craigslist

16   website to post advertisements for commercial sex in different parts of the country.  Those

17   allegations remain insufficient; Plaintiff still fails to "allege facts supporting the inference that

18   Craigslist made a tacit agreement *with the sex traffickers who victimized Plaintiff*."  Order at 15

19   (emphasis added); *see also id.* (requiring Plaintiff to show craigslist's participation in "a specific

20   venture").  For these reasons and others, Plaintiff's TVPRA claim still fails.

21   *Finally*, and at the very least, Plaintiff cannot state a beneficiary claim under Section 1595

22   for conduct pre-dating the effective date of the 2008 amendments to the TVPRA (December 23,

23   2008), because those amendments do not apply retroactively.  *See Landgraf v. USI Film Prods.*,

24   511 U.S. 244, 268-80 (1994).  Thus—if the Court does not dismiss the TVPRA claim outright—

25   the claim must still be dismissed to the extent Plaintiff seeks to hold craigslist liable for conduct

26   before that date.

27

28

# BACKGROUND

## A.    Facts

craigslist is the owner and operator of a website that provides an online platform for third-party users to post, browse, and search local classifieds and other content submitted by third-party users.  *See* FAC ¶¶ 15, 41.  The craigslist website is used by millions of people each month in the U.S. to list or find jobs, housing, goods and services, activities, advice, and community information.  *See* FAC ¶ 50; *see also Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 961 (N.D. Ill. 2009) ("Craigslist's users create and post over thirty million new classified advertisements each month for, among other things, jobs, housing, dating, used items, and community information." (internal quotation marks and citations omitted)); Order at 15 (referring to the fact that sites like craigslist "receive billions of posts").  To render that vast quantity of user-submitted content usable, the craigslist website is organized by geographic location and categorized by subject matter.  *See* FAC ¶ 41.  It is the user, not craigslist, who creates the content of any particular posting, as well as the category in which the posting is to be published.  *See* FAC ¶¶ 38-39, 41; Order at 11.

The craigslist website has many different subcategories within which a user can submit a posting.  During the relevant time period, one such subcategory was titled "erotic services," which craigslist later changed to "adult services."  *See* FAC ¶¶ 30, 34, 43.  craigslist prohibited users from posting advertisements or other content in violation of its posting policies and content requirements, including "ads soliciting illegal conduct such as prostitution as well as pornographic images."  FAC ¶¶ 38, 44.

Plaintiff J.B. alleges that she was trafficked for commercial sex in multiple hotels between 2007 and 2011, and that she was a minor for part of that period.  FAC ¶¶ 1, 29-30.  She alleges that she is a victim of sex trafficking under 18 U.S.C. § 1595(a). FAC ¶¶ 99-100.  Plaintiff also alleges that at least some portion of her trafficking involved postings to the craigslist website in which she was the subject.  FAC ¶¶ 29-31.  Plaintiff alleges that these ads were posted in craigslist's "erotic services" subcategory and later its "adult services" subcategory.  FAC ¶ 2.  The FAC does not allege specifically when the craigslist advertisements of Plaintiff appeared or how

many ads there were.[1]  Significantly, the FAC does not specify who actually posted the ads on craigslist—whether it was Plaintiff herself, the individuals who trafficked her, or someone else. *See* FAC ¶¶ 2, 5, 28, 30-31, 38, 45, 102.

## B. Procedural History

Plaintiff filed this lawsuit in 2019, asserting TVPRA claims and related state-law claims against craigslist, various hotel defendants, and others.  craigslist moved to dismiss on grounds that Plaintiff's claims against craigslist were barred by the CDA and for failure to state a claim. *See* Dkts. 41, 70.  In its August 20, 2020 ruling, the Court granted craigslist's motion to dismiss in full.  *See* Order at 5-15.

*First*, the Court held that Section 230 barred Plaintiff's state-law claims and dismissed those claims with prejudice. *Id.* at 11.  The Court found that all of Section 230(c)(1)'s requirements were met:  craigslist is the provider of an interactive computer service, and Plaintiff's claims seek to treat craigslist a publisher of information provided by another information content provider. *See id.* at 5-6.  The Court also rejected Plaintiff's argument that craigslist was "responsible, in whole or in part, for the creation or development" of the ads at issue, finding that Plaintiff pleaded no facts to support this argument. *Id.* at 10-11.  And the Court rejected Plaintiff's argument that the 2018 enactment of the Fight Online Sex Trafficking Act ("FOSTA") withdrew craigslist's CDA immunity from state-law sex-trafficking claims.  *Id.* at 8-10.  The Court's opinion did not specifically address craigslist's argument that Section 230 additionally bars Plaintiff's beneficiary claim under 18 U.S.C. § 1595(a) (*see* Dkt. 70 at 3-4), but the Court's reasoning appears to have rejected it.  Order at 12 ("Given that FOSTA specifically excluded any claim brought under Section 1595, the CDA does not apply to this claim and Craigslist is not entitled to immunity.").

*Second*, the Court held that Plaintiff failed to state a beneficiary claim under Section 1595(a), because Plaintiff had not adequately pleaded craigslist's participation in the venture that trafficked her. *Id.* at 11-15.  The Court determined that, at a minimum, the "participation in a venture" element requires Plaintiff to plead facts showing "a continuous business relationship

---

[1] In her original complaint, Plaintiff alleged she was advertised on craigslist between 2007 and 2010.  Compl. ¶¶ 5, 73 (Dkt. 1-2).

between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement" with regard to trafficking.  *Id.* at 13-14 (quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)).  Plaintiff's allegation that craigslist was generally aware that third parties misused its platform to advertise commercial sex with minors was not sufficient to meet this "tacit agreement standard," because "this allegation necessarily suggests that Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website, and there is no factual basis pled that makes this claim plausible."  *Id.* at 14.

Because Plaintiff had "fail[ed] to plausibly plead Craigslist's participation in any venture at all," the Court declined to reach craigslist's remaining arguments about why Plaintiff's allegations were insufficient.  *Id.* at 14-15 nn.3-4.  The Court noted, however, that Plaintiff would have to plead craigslist's participation in the *specific venture* composed of "the sex traffickers who victimized Plaintiff" (even if Plaintiff might not need to plead craigslist's actual or constructive knowledge of her own trafficking).  *Id.* at 15; *see also id.* at 14 n.3.  The Court concluded by observing that "the TVPRA's requirement that the defendant participate in a venture makes actions against websites such as craigslist difficult to establish, given that such sites receive billions of posts and interaction with a specific venture may be hard to show," and further cautioned that "Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site."  *Id.* at 15.  The Court dismissed Plaintiff's TVPRA claim with leave to amend, allowing Plaintiff to attempt to "allege facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff."  *Id.*

Plaintiff filed the FAC to re-plead her TVPRA claim against craigslist (as well as other dismissed claims against the other defendants).  craigslist now moves to dismiss.

## ARGUMENT

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility only when the plaintiff pleads "factual content"—not just "[t]hreadbare recitals of the elements" or "conclusory

1    statements"—that "allows the court to draw the reasonable inference that the defendant is liable

2    for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To avoid dismissal, a

3    plaintiff must set forth sufficient factual allegations to raise a right to relief above the speculative

4    level.  *Twombly*, 550 U.S. at 555.  Pleadings that only permit the Court to infer "the mere

5    possibility of misconduct" should be dismissed. *Iqbal*, 556 U.S. at 679.  Although the Court must

6    accept all well-pleaded facts as true, it need not accept legal conclusions, and "a formulaic

7    recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

8    Plaintiff's re-pleaded TVPRA claim against craigslist should be dismissed with prejudice

9    for two independent reasons:  (i) the claim is barred by Section 230, and (ii) Plaintiff still fails to

10   plead facts satisfying the claim's elements, including craigslist's alleged participation in the

11   venture that trafficked her.  At the very minimum, Plaintiff cannot state a claim for any alleged

12   conduct predating December 23, 2008—the effective date of the TVPRA amendment creating

13   Section 1595 beneficiary liability—and thus, even if her claim could survive dismissal based on

14   Section 230 and Federal Rule of Civil Procedure 12(b)(6), it must be limited accordingly.

15   **I.        PLAINTIFF'S TVPRA CLAIM IS BARRED BY CDA SECTION 230(C)(1)**

16   craigslist respectfully asks this Court to revisit its previous determination that Section 230

17   does not bar Plaintiff's federal Section 1595 claim.  *See* Order at 12.  The Court has the discretion

18   to do so.  *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042-43 (9th Cir. 2018) ("The

19   law of the case doctrine does not preclude a court from reassessing its own legal rulings in the

20   same case" before final judgment is entered, and parties need not meet any "heightened burden"

21   to convince the court to depart from its prior reasoning or to "correct any errors or

22   misunderstandings.").

23   Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service

24   shall be treated as the publisher or speaker of any information provided by another information

25   content provider."  47 U.S.C. § 230(c)(1).  By its terms, that provision applies to federal and state

26   claims alike—although another part of the statute, Section 230(e)(1), has always exempted federal

27   *criminal* prosecutions from this immunity.  *See id.* § 230(e)(1); *Jane Doe No. 1 v. Backpage.com,*

28

1  *LLC*, 817 F.3d 12, 23 (1st Cir. 2016) (pre-FOSTA, holding all federal civil claims barred by

2  Section 230(c)(1), but not federal criminal prosecutions).

3        In 2018, Congress enacted FOSTA, which amended Section 230.  FOSTA left Section

4  230(c)(1) untouched, but it newly exempted from CDA immunity certain federal civil claims under

5  the TVPRA.  *See* 47 U.S.C. § 230(e)(5)(A).  Notably, however, Congress did not exempt *all* claims

6  brought under Section 1595, or even all sex-trafficking claims under Section 1595.  Instead, the

7  new Section 230(e)(5)(A) exempts from immunity "any claim in a civil action brought under

8  section 1595 of Title 18, *if the conduct underlying the claim constitutes a violation of section 1591*

9  *of that title*."  *Id.* (emphasis added).  The italicized language limits the immunity exemption to only

10  a subset of Section 1595 claims:  those where "the conduct" on which the plaintiff's civil claim is

11  based (*i.e.*, the defendant's conduct) would violate Section 1591, the TVPRA's criminal sex-

12  trafficking provision.  And Section 1591 has a more stringent *mens rea* than Section 1595—to be

13  liable as a financial beneficiary of trafficking under Section 1591, the defendant must "know[]" or

14  be in "reckless disregard of the fact" that illegal trafficking has occurred.  18 U.S.C. § 1591(a)(2),

15  (e)(4).

16        Only two other courts have squarely addressed the scope of Section 230(e)(5)(A)'s

17  exemption for federal civil claims.  Both have held that a civil TVPRA claim falls outside a

18  defendant's CDA immunity only if the defendant's conduct amounts to a violation of Section 1591.

19  *See Doe v. Kik Interactive, Inc.*, No. 20-60702-CIV, 2020 WL 5156641, at *7 (S.D. Fla. Aug. 31,

20  2020); *M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 5494903, at *4 (W.D. Wash.

21  Sept. 11, 2020).  As the *Kik* court put it, "[h]ad Congress intended to revoke CDA immunity for

22  all claims involving sex trafficking on websites (as argued by Plaintiff), it could have done so; but

23  it did not.  The plain language of the statute removes immunity *only* for conduct that violates 18

24  U.S.C. § 1591." 2020 WL 5156641, at *5, 7 (emphasis added); *see also M.L.*, 2020 WL 5494903,

25  at *4 ("Plaintiff has made clear that she is not alleging a violation of § 1591 but rather is alleging

26  that craigslist has violated the TVPRA through beneficiary liability found in § 1595.  The Court

27  agrees with craigslist's argument that FOSTA does not create an exemption for all § 1595 claims."

28  (citation omitted)).

1   The reasoning of both courts is sound.  As the *Kik* court explained, Congress deliberately

2   crafted the Section 230(e)(5)(A) exemption to withdraw immunity from *only* those interactive

3   computer services whose conduct meets "the exacting standard of 'actual knowledge' and 'overt

4   act' employed in a criminal prosecution" under Section 1591.  2020 WL 5156641, at *7.  To hold

5   otherwise "would have the Court disregard the plain language and structure of FOSTA" and render

6   much of the language in Section 230(e)(5)(A) surplusage.  *Id.*

7   FOSTA's legislative history reinforces the text's clear import:  Congress intended to

8   remove Section 230 immunity for civil TVPRA claims only when the defendant's conduct would

9   amount to a criminal TVPRA violation.  During the FOSTA floor debate, senators emphasized

10  that the bill would only withdraw immunity from websites that satisfied the "knowing" *mens rea*

11  standard of Section 1591.  *See* 164 Cong. Rec. S1849, at S1860 (daily ed. Mar. 21, 2018)

12  (statement of Senator Durbin) ("[FOSTA] is a narrowly crafted bill that would ensure that Section

13  230 of the Communications Decency Act does not provide legal immunity to websites like

14  Backpage that *knowingly* facilitate sex trafficking." (emphasis added)); *id.* at S1851 (statement of

15  Senator Blumenthal) ("This bill would clarify [that] section 230 . . . was never intended to

16  immunize completely those websites so they could *knowingly* facilitate sex trafficking." (emphasis

17  added)); *id.* at S1859 (statement of Senator Fischer) ("[FOSTA] would ensure that section 230 . . .

18  cannot be used as an excuse anymore for websites that *knowingly* facilitate sex trafficking."

19  (emphasis added)); *id.* at S1864 (statement of Senator Sullivan) ("[FOSTA] will ensure that

20  websites and other institutions on the internet and [related companies] that knowingly—*and that*

21  *is an important word, 'knowingly'*—facilitate sex trafficking can be held accountable for their

22  actions." (emphasis added)); *see also* H.R. Rep. No. 115-572, pt. 1, at 5 (2018).

23  Based on this record, the *Kik* court concluded that "Congress only intended to create a

24  narrow exemption to the CDA for openly malicious actors such as Backpage where it was plausible

25  for a plaintiff to allege *actual knowledge* and overt participation."  2020 WL 5156641, at *7

26  (emphasis added; internal quotation marks omitted).  Thus, the provision's plain text and its history

27  demonstrate that Section 230(e)(5)(A) withdraws CDA immunity only for TVPRA claims brought

28  against websites for *knowing* conduct constituting a violation of Section 1591, but not for

1    Section 1595 beneficiary claims that require only constructive knowledge.[2]

2    Here, Plaintiff has repeatedly confirmed that her Section 1595 claim does *not* allege that

3    craigslist's conduct amounted to a violation of Section 1591.  *See, e.g.*, FAC ¶ 23 & n.11 ("In this

4    action, Plaintiff brings beneficiary claims [under Section 1595(a)] against Defendants as the

5    beneficiaries of her sex trafficking."); Dkt. 69 at 1 ("Nor does J.B. allege that Craigslist was itself

6    a 'perpetrator' of sex trafficking in violation of § 1591."); *id.* at 6-7 ("J.B.'s complaint is clear that

7    she is pleading a cause of action for beneficiary liability against Craigslist pursuant to § 1595, not

8    perpetrator liability pursuant to § 1591."); Apr. 9, 2020 Hrg. Tr. 39:12-21, 40:19-24 (Dkt. 92).

9    And Plaintiff has argued that she need not establish that craigslist had "*actual knowledge* of

10   participation in the sex trafficking itself."  Dkt. 69 at 8 & n.8.

11   Because Plaintiff's Section 1595 claim does not fall within the limited Section

12   230(e)(5)(A) exception to CDA immunity for claims based on "a violation of section 1591," it

13   must be dismissed as barred by Section 230(c)(1).

14   **II.   PLAINTIFF FAILS TO PLEAD FACTS SUPPORTING NECESSARY
         ELEMENTS OF HER TVPRA CLAIM AGAINST CRAIGSLIST**

15

16   Even if Plaintiff's TVPRA claim were not barred by the CDA, it would fail on the merits.

17   To plead a beneficiary-liability claim under 18 U.S.C. § 1595(a), a plaintiff must allege facts

18   showing the defendant (i) "knowingly benefit[ted], financially or by receiving anything of value

19   from" (ii) "participation in a venture," (iii) "which [the defendant] knew or should have known

20   has engaged in an act in violation of [Section 1591]."   The allegations in Plaintiff's amended

21

22   [2] In responding to this argument in craigslist's prior motion to dismiss, Plaintiff contended that
23   adopting craigslist's reading of Section 230(e)(5)(A) "would effectively write Section 1595 out of
     existence." Dkt. 86 at 5.  That is demonstrably incorrect.  First, Section 1595 claims—including
24   Section 1595 beneficiary claims—would still lie against entities that aren't covered by Section 230
     immunity (for instance, hotels).  Second, Section 1595 claims would still lie against entities
25   otherwise covered by Section 230 if the entity's conduct amounts to a violation of Section 1591.
     And as noted above, Section 1591 has its own beneficiary-liability provision, albeit one with a
26   more demanding *mens rea* requirement than Section 1595's constructive knowledge standard.  *See*
     18 U.S.C. § 1591(a) (prohibiting "[w]hoever knowingly . . . benefits, financially or by receiving
27   anything of value, from participation in a venture which has engaged in [a trafficking act],
     knowing, or, . . . in reckless disregard of the fact, that [force will be used or the victim is a minor]");
28   *id.* § 1591(e)(4) (defining "participation in a venture" as "knowingly assisting, supporting, or
     facilitating a violation of subsection (a)(1)").

1    complaint still fall short.

2        A.    **The FAC Does Not Allege That craigslist Participated In A Venture With**
             **Plaintiff's Traffickers**
3

4        To plead craigslist's "participation in a venture" that trafficked Plaintiff, the Court has

5    required Plaintiff to allege facts showing "a continuous business relationship between the trafficker

6    and [craigslist] such that it would appear that the trafficker and [craigslist] have established a

7    pattern of conduct or could be said to have a tacit agreement." Order at 13 (quoting *M.A.*, 425 F.

8    Supp. 3d at 970). In other words, the Court has held that there must be a continuous business

9    relationship between craigslist and Plaintiff's traffickers indicating at least a tacit agreement

10   between them to join for a common purpose, *i.e.*, a common undertaking.

11       The Court's announced standard implements the plain meaning of the word "venture." *See*

12   *Venture*, Black's Law Dictionary (11th ed. 2019) ("[a]n undertaking that involves risk; esp., a

13   speculative commercial enterprise"); *see also Joint Venture*, Black's Law Dictionary (11th ed.

14   2019) (a joint undertaking bound together by "an express or implied agreement" and "a common

15   purpose that the group intends to carry out"). It is also consistent with Congress's embrace of the

16   plain meaning of the word elsewhere in the TVPRA: Section 1591 defines "venture" as "any

17   group of two or more individuals *associated in fact*." 18 U.S.C. § 1591(e)(6) (emphasis added).[3]

18   The TVPRA's use of the "associated in fact" formulation is significant, as the Supreme Court has

19   explained that an "association in fact" is a "group of persons associated together for *a common*

20   *purpose of engaging in a course of conduct*." *United States v. Turkette*, 452 U.S. 576, 583 (1981)

21   (emphasis added) (interpreting RICO, which similarly defines "enterprise" as requiring an

22   association in fact). There must be evidence of "an ongoing organization, formal or informal,"

23   and evidence that "the various associates function as a continuing unit." *Id.* An association-in-

24   fact must also have "a purpose, relationships among those associated with the enterprise, and

25   _____

26   [3] Other courts have used the Section 1591(e)(6) definition of "venture" in applying other
     provisions of the TVPRA. *See Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017); *Bistline v.*
27   *Parker*, 918 F.3d 849, 873 (10th Cir. 2019). Although the Court's Order did not focus specifically
     on this point, the Court did not appear to disagree that the Section 1591(e)(6) definition should
28   inform the meaning of the same word in Section 1595(a), particularly since that cross-reference
     does not raise the same *mens rea* concern as the definition in Section 1591(e)(4).

1    longevity sufficient to . . . pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938,

2    946 (2009).

3         Moreover, it is well-established that mere commercial transactions—such as craigslist's

4    collection of a standard fee from users who post an advertisement—are not enough to satisfy this

5    "common purpose" test. *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir.

6    2016) (finding that technology and public relations firms did not share common purpose with

7    customer Spirit); *Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y.

8    July 17, 2018) ("[B]eing an 'instrumentality' does not . . . mean one shares a common purpose.");

9    *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("The fact that BoC

10   provided general professional services to IFS and Siu Lap, services that BoC provides to the public

11   at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common

12   unlawful purpose.").

13        The word "participation," in turn, is ordinarily understood to involve a deliberate act of

14   *joining* the enterprise or *taking part* in its activities. *See Participation*, Oxford English Dictionary

15   (3d ed. 2005) ("[t]he process or fact of sharing in an action, sentiment, etc.; . . . active involvement

16   in a matter or event"); *see also Participation*, Black's Law Dictionary (11th ed. 2019) ("[t]he act

17   of taking part in something, such as a partnership, a crime, or a trial"). Importantly, the word

18   requires more than mere awareness of the venture's activities or non-opposition to them. For

19   instance, in the closely related context of aiding and abetting liability, the Supreme Court has

20   emphasized that "[a] defendant must not just in some sort associate himself with the venture, but

21   also *participate* in it as something that *he wishes to bring about and seek by his action to make it*

22   *succeed*." *Rosemond v. United States*, 572 U.S. 65, 76 (2014) (internal quotation marks and

23   citation omitted; emphasis added). Underscoring this point, *Rosemond* distinguished between

24   "defendants who incidentally facilitate a criminal venture" and those who "actively participate in

25   it." *Id.* at 77 n.8 (emphasis added). To further illustrate the distinction, the *Rosemond* Court

26   imagined a hypothetical "owner of a gun store who sells a firearm to a criminal, knowing but not

27   caring how the gun will be used" as an example of mere incidental facilitation of a criminal venture

28   (as opposed to active participation). *Id.* If selling a gun to a criminal with knowledge that the

1  criminal intends to do harm does not constitute active participation in a venture, then certainly

2  craigslist's development of a neutral online platform to display third-party content cannot

3  constitute participation in a venture, either.

4       The allegations in Plaintiff's amended complaint still do not come close to alleging an

5  ongoing tacit agreement between craigslist and Plaintiff's traffickers to join together for a common

6  purpose.  First, the FAC never even alleges that *traffickers* were the ones to post ads of Plaintiff

7  on the craigslist website.  Instead, the FAC consistently uses passive voice and similar phrasing

8  whenever it describes the ads, thereby leaving open the possibility that someone other than

9  Plaintiff's traffickers were the ones to post them.[4]  Plaintiff thus fails to allege that her traffickers

10  entered into any kind of transaction or arrangement with craigslist *at all*.  And notably, in her

11  original complaint, Plaintiff alleged that *she* created and posted at least some of the ads herself.

12  Compl. ¶ 72 (Dkt. 1-2) (alleging that J.B. "was enticed onto Craigslist and taught by another minor

13  how to post pictures and create advertisements" which "led to minor J.B. being sex trafficked by

14  traffickers and buyers"); *see also* Order at 6 ("Plaintiff alleges that she created the posts.").

15  Although the original complaint also alleged that traffickers posted ads, *see* Compl. ¶ 20, Plaintiff

16  omitted that allegation from the FAC.  She has thus failed to allege that the traffickers were the

17  ones to post the ads—and she certainly cannot seek to hold craigslist liable for participating in a

18  venture *with Plaintiff* to enable her trafficking.[5]

19       Even if—contrary to Plaintiff's careful omission of any such allegation in the FAC—third-

20

21  [4] *See* FAC ¶ 2 (Plaintiff "was advertised" on craigslist), ¶ 5 (Plaintiff "w[as] trafficked through
   commercial sex advertisements on the Craigslist platform"), ¶ 28 (referring to when Plaintiff's
22  "sex trafficking began"); ¶ 29 (Plaintiff was forced to engage in commercial sex acts "with the
   support and facilitation of advertisements posted openly on Craigslist[]"), ¶ 30 (adults "would
23  often respond to a post advertising Plaintiff for sex on Craigslist[]"), ¶ 31 ("Craigslist continued
   to permit advertisements for Plaintiff on its platform"), ¶ 38 (referring to craigslist ads "though
24  which Plaintiff was trafficked"), ¶ 45 (referring to Plaintiff being "trafficked on the Craigslist
   platform"); ¶ 102 (alleging that Plaintiff was injured "as the result of being trafficked . . . through
25  Defendant Craigslist's platform").

26  [5] To be clear, by calling the Court's attention to Plaintiff's prior allegation that she was the one to
   post ads, craigslist is not "victim-blaming."  Dkt. 69 at 2.  Regardless of who authored the posts,
27  the abuse that Plaintiff allegedly suffered afterward is despicable.  But as a legal matter, if Plaintiff
   was the only one to conduct business with craigslist by posting on its site, then there is simply no
28  basis for inferring that craigslist entered into any kind of arrangement with Plaintiff's traffickers—
   or even interacted with them—at all.

party traffickers were the ones to post the relevant ads, Plaintiff still has alleged no facts showing that craigslist made a tacit agreement with those individuals to establish a common trafficking enterprise. The mere fact that craigslist allows someone to post content on its site does not mean that craigslist has entered into a tacit agreement with that person—or has "participated in a venture" with him or her—with respect to the subject matter of the posting.

In trying to satisfy the tacit-agreement requirement, Plaintiff simply re-packages and re-pleads the same allegations the Court previously found insufficient. She alleges:

- that craigslist was generally aware that third parties misused the craigslist website to carry out commercial-sex activity and trafficking activity, *compare* FAC ¶¶ 2, 4, 32-38, *with* Compl. ¶ 20(d), (f), (j), (*l*)-(m);

- that the craigslist website had an "erotic services" subsection, which it later renamed to "adult services," and collected standard fees for postings in that section, *compare* FAC ¶¶ 41(c), 43, 49, *with* Compl. ¶ 20(d), (f)-(g), (k), (m);

- that various standard features of the craigslist website supposedly facilitated illegal activity, including the use of categories, providing users with the ability to search by geography, allowing users to post images, and the use of an anonymous email communication system, *compare* FAC ¶¶ 2, 41-42, 44, *with* Compl. ¶ 20(d)-(i), (m);

- that craigslist imposed content requirements to deter prohibited postings, which traffickers allegedly circumvented with "code" and thereby avoided detection, *compare* FAC ¶¶ 38, 41(c), 44, *with* Compl. ¶ 20(d)-(e), (m);

- the existence of lawsuits and investigations of trafficking on craigslist by state and local law-enforcement authorities, *compare* FAC ¶¶ 3, 34, 46, *with* Compl. ¶ 20(*l*)-(m);

- the existence of advocacy efforts, media coverage, and public campaigns drawing attention to the issue of trafficking on the craigslist website, *compare* FAC ¶¶ 3, 36-37, 43, *with* Compl. ¶ 20(e), (j), (*l*)-(m); and

- that law enforcement used the craigslist website to conduct sting operations to capture traffickers, *compare* FAC ¶¶ 3, 33, *with* Compl. ¶ 20(*o*).

In its prior ruling, this Court specifically noted the vast majority of those allegations, *see*

Order at 3-4, 12-13, before finding that Plaintiff failed to allege craigslist's participation in a venture with the traffickers who abused her, *see id.* at 14-15.  For good reason:  craigslist's provision of standard features suited to the nature of its classifieds website—even when combined with an alleged general awareness that some users were misusing the site to carry out illegal activity—does not give rise to an inference that craigslist tacitly *joined a venture* with each user who posted an illegal trafficking advertisement.  As this Court correctly explained, "Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site."  Order at 15.  No one would say, for instance, that craigslist has "participated in a restaurant venture" just because it permits a restaurant to post an ad seeking a waiter, or that craigslist has "participated in a real estate venture" because it allows a realtor to advertise a home listing.

In the end, Plaintiff includes only four arguably new allegations against craigslist in the FAC.  None establishes that craigslist participated in a venture with the traffickers who abused her.

*First*, Plaintiff alleges that, beginning in May 2009, craigslist manually reviewed postings in the "adult services" category to screen postings that violated craigslist's terms of use, including craigslist's prohibition on "ads soliciting illegal conduct such as prostitution as well as pornographic images."  FAC ¶¶ 4, 38; *see also* Compl. at 4-5, *craigslist, Inc. v. McMaster*, No. 2:09-cv-1308-CWH (D.S.C. May 20, 2009) (cited at FAC ¶¶ 4, 38 as the source of Plaintiff's allegation).  Of course, it makes little sense to hold craigslist's voluntary efforts to *prevent* illegal activity against it for purposes of TVPRA liability.  *Cf.* 47 U.S.C. § 230(c)(2) (granting websites immunity for taking actions to restrict the availability of objectionable content).  But even putting that substantial policy concern aside, it remains the case that craigslist does not enter into a tacit agreement to carry out a joint activity with every user whom craigslist permits to post, even if craigslist is aware of the post's content.  To go back to the real-estate example, even if craigslist had reviewed photos and the description of the advertised home to ensure compliance with website rules, still no one would say craigslist had entered into a real-estate venture with the broker.  Again, this Court has already rejected that proposition as vastly overbroad:  Plaintiff's theory of liability "necessarily suggests that Craigslist enters into tacit agreements with all traffickers (or even all

1   posters) that use its website, and there is no factual basis pled that makes this claim plausible."

2   Order at 14; *see also id.* at 15; *Rosemond*, 572 U.S. at 77 n.8 (reasoning that a gun store owner

3   who "know[s]" how the gun he sells will be used has merely "incidentally facilitate[d] a criminal

4   venture rather than actively participate[d] in it").

5         *Second*, Plaintiff alleges that craigslist "fought to own" the content posted on the site by

6   "repeatedly stifl[ing] other web developers' efforts to build on top of its data" and engaging in

7   efforts to keep other entities from republishing the user-generated content.  FAC ¶ 45 & nn.40-42.

8   It is unclear how this allegation plausibly supports Plaintiff's assertion that craigslist participated

9   in a venture with her traffickers (or indeed, how it supports any of the Section 1595 elements).

10         *Third*, Plaintiff alleges that craigslist responded to concerns of serious illegal activity on

11   its site with unapologetic disregard.   As proof, she twice quotes a craigslist official as

12   commenting—supposedly "[i]n response" to allegations of "sex traffick[ing]" on the site—that

13   "we [at Craigslist] feel it is important to err on the side of respecting free speech and privacy rights,

14   and to leave moral judgments to the greater wisdom of the Craigslist community."  FAC ¶¶ 2, 39

15   (citing Kai Beech, *Craigslist Confidential:  A Recent Sting Puts the Spotlight on an Internet Red*

16   *Light District*, New Times (Dec. 19, 2007), https://www.newtimesslo.com/sanluisobispo/

17   craigslist-confidential/Content?oid=2948404).  But Plaintiff excises half of the statement in a way

18   that is inexcusably deceptive.  Although Plaintiff makes it seem as though craigslist was defending

19   posts about sex trafficking, the full quote reveals the craigslist official actually *condemned* illegal

20   activity, including sexual exploitation of minors, in no uncertain terms:  "*Illegal activity is not*

21   *welcome*, but where *legal conduct between consenting adults* is concerned we feel it is important

22   to err on the side of respecting free speech and privacy rights, and to leave moral judgments to the

23   greater wisdom of the Craigslist community, who are empowered through our flagging system."

24   Beech, *Craigslist Confidential* (emphasis added).[6]

25

---

26   [6] The Court may consider the full quote from the FAC's cited source under the incorporation by reference doctrine.  *See In re Facebook, Inc. Shareholder Derivative Privacy Litig.*, 367 F. Supp.

27   3d 1108, 1118 (N.D. Cal. 2019) (Gilliam, J.) (the incorporation by reference doctrine "allows a court to consider certain documents as though they were part of the complaint itself . . . to prevent

28   plaintiffs from cherry-picking certain portions of documents that support their claims, while omitting portions that weaken their claims").

*Fourth*, Plaintiff alleges that craigslist invoked its immunity under the CDA in response to threatened legal action. *See* FAC ¶¶ 4-5, 47. But the suggestion that craigslist entered into a venture with sex traffickers simply because it invoked its Section 230 immunity as a publisher of third-party content under federal law—protections that *this Court has already held are applicable under the circumstances here*—is wholly misguided. Needless to say, craigslist's fully justifiable reliance on its congressionally conferred immunity should not a basis for inferring liability under another federal statute.

Because the FAC still "fails to plausibly plead Craigslist's participation *in any venture at all*," Order at 14 n.3 (emphasis added), Plaintiff's TVPRA claim must once again be dismissed on this basis.

## B. The FAC Does Not Allege That craigslist Participated In A Venture With Plaintiff's Traffickers Specifically

Plaintiff has also failed to allege facts showing that craigslist participated in the *specific* venture that trafficked Plaintiff in violation of 18 U.S.C. § 1591. At most, Plaintiff alleges craigslist was aware that some amount of unlawful content related to sex trafficking was being posted on its site by third parties (despite craigslist's prohibition on that content and attempts to deter such misuse). But according to this Court's prior Section 1595 analysis and that of other district courts confronting the same issue, such allegations of a defendant's generalized awareness are insufficient.

In its prior Order, the Court indicated skepticism of craigslist's argument (made in its prior motion to dismiss) that Plaintiff "must show craigslist's actual or constructive knowledge of *her trafficking specifically*." Order at 14 n.3 (citation omitted); *see also* Dkt. 70 at 11-12. However, the Court ultimately declined to decide the question. *See* Order at 14 n.3. craigslist maintains that this is the best reading of the text of Section 1595, which requires the defendant-beneficiary to be at least constructively aware that the relevant venture "*has* engaged in *an act* in violation of this chapter." 18 U.S.C. § 1595(a) (emphasis added).

But even if Plaintiff need not show that craigslist was constructively aware of her trafficking specifically, craigslist agrees with the Court's prior reasoning that craigslist must have

at least participated in *the specific venture* that trafficked her. *See* Order at 15 ("Plaintiff must allege facts supporting the inference that Craigslist made a tacit agreement *with the sex traffickers who victimized Plaintiff*" (emphasis added); *id.* (requiring "interaction with a specific venture"); *id.* at 14 n.3 (envisioning a scenario "in which a website operator openly and knowingly makes a deal with sex traffickers to support the venture" but "d[oes] not know in advance the names or identities of the particular people who would end up being predictably victimized").

The Court's previous conclusion on this point is consistent with the text of Section 1595(a) and the persuasive analysis of other district courts. Again, Section 1595(a) imposes liability when the defendant "knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." The statutory text thus "speaks in singular terms" by referring to "*a venture which that person . . . should have known has* engaged in *an* act in violation of this chapter.'" *S.J. v. Choice Hotels Int'l, Inc.*, No. 19-CV-6071 (BMC), 2020 WL 4059569, at *5 (E.D.N.Y. July 20, 2020). As several courts have now held, that language requires the defendant to possess knowledge or constructive knowledge of at least one violative act by the *particular* trafficking venture that victimized the plaintiff, as opposed to knowledge of a trafficking problem more generally. *See id.* ("Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a *specific sex trafficking venture*, they cannot be held directly liable [as financial beneficiaries] under the TVPRA." (emphasis added)); *H.G. v. Inter-Continental Hotels Corp*, No. 19-CV-13622, 2020 WL 5653304, at *5 (E.D. Mich. Sept. 23, 2020) ("[A] plaintiff must plead facts showing that the defendant knew or should have known of sex trafficking *by the particular venture in which the defendant allegedly participated*. Indeed, the plain language of the financial beneficiary prong clearly links the required knowledge to the venture in which the defendant purportedly participated."); *A.B. v. Hilton Worldwide Holdings Inc.*, No. 3:19-CV-01992-IM, 2020 WL 5371459, at *9 (D. Or. Sept. 8, 2020) ("General knowledge of commercial sex activity occurring at [defendants'] hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff."); *Doe 4 v. Red Roof Inn, Inc.*, No. 1:19-cv-03845-WMR, 2020 WL 1872336, at *3 (N.D. Ga. Apr. 13, 2020) ("Allegations that customers complained about

prostitution existing on properties itself is insufficient to meet a known or should have known standard under either 18 U.S.C. §§ 1595(a) or 1591(a)."); *cf. Ratha v. Phatthana Seafood Co.*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174, at *5 (C.D. Cal. Dec. 21, 2017) (finding defendants' awareness of "general reports" of trafficking at a factory from which they purchased insufficient to infer their constructive knowledge of a particular trafficking venture under Section 1595(a)).

It is therefore insufficient for Plaintiff to allege craigslist's participation in one giant venture composed of any and all traffickers who have ever misused the craigslist website in any part of the country.  But this is all that the FAC alleges.[7]  In other words, Plaintiff's allegations suggest at most the existence of an overarching sex-trafficking venture that craigslist supposedly facilitated by making the erotic services and adult services categories available.  *See, e.g.*, FAC ¶ 43 (alleging craigslist's "participation in *the venture* through which Plaintiff and countless other adults and children were trafficked" (emphasis added)); FAC at 12 (alleging that "Craigslist participated in the sex trafficking venture by maintaining and evolving its online sex-for-hire marketplace").  What Plaintiff fails to do, however, is show that craigslist entered into any kind of ongoing agreement or arrangement with *the specific individual or individuals who trafficked her* in Oakland or Alameda County.  Indeed, as addressed above, Plaintiff does not even allege that craigslist entered into a *single* business transaction with those individuals (which wouldn't be enough to show participation regardless).  *See supra* 12-14.

In short, Plaintiff has pleaded no facts in the FAC showing craigslist participated in any way with the specific venture that trafficked Plaintiff, nor that craigslist had knowledge or constructive knowledge of that venture's Section 1591 violations.  Plaintiff's TVPRA claim should be dismissed on this ground as well.

---

[7] *See, e.g.*, FAC ¶ 32 (alleging that "[i]t was well known by Craigslist, sex traffickers, and sex buyers alike that the Craigslist platform operated as a marketplace for sex trafficking"); ¶ 38 (alleging that "hundreds of commercial sex advertisements were posted on craigslist every day, including those through which Plaintiff was trafficked"); ¶¶ 2-3, 33-36, 39-40, 42, 46 (alleging craigslist's participation in a sex-trafficking venture by virtue of the existence of a "well-publicized effort" targeting craigslist, as well as law-enforcement attention to trafficking on craigslist in San Luis Obispo County; Bakersfield; Cook County, Illinois; and South Carolina, and a Bay Area FBI sting operation that is not alleged to have involved Plaintiff or her traffickers); ¶ 40 (relying on the experience of another individual who was allegedly trafficked on craigslist, without explaining how that individual was connected to Plaintiff or her traffickers in any way).

**C.     The FAC Does Not Allege That craigslist Knowingly Benefited From Plaintiff's Trafficking**

Finally, Plaintiff still has not pleaded sufficient facts to support her theory that craigslist "knowingly benefit[ed] . . . from participation in a venture" to traffic Plaintiff.   18 U.S.C. § 1595(a).  The "knowingly benefit" element of Section 1595(a) requires a "causal relationship between" the defendant's "affirmative conduct furthering the sex-trafficking venture" and the defendant's "receipt of a benefit" in exchange.  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); *see also id.* (reasoning that although The Weinstein Company "undoubtedly benefited from H. Weinstein's continued employment," the "controlling question . . . is whether H. Weinstein provided any of those benefits to TWC *because of* TWC's facilitation of H. Weinstein's sexual misconduct").

Plaintiff alleges that craigslist "knowingly benefited . . . from Plaintiff's trafficking" in two ways:   (i) by receiving a fee for ads posted in the "erotic services" and/or "adult services" subcategories, and (ii) by "knowingly leverag[ing] its popularity as a marketplace for sexual exploitation to amass a substantial user base, ultimately making it one of the most visited websites in the country."  FAC ¶¶ 48-50.  With respect to Plaintiff's first theory, she has not alleged that the fees craigslist collected from ads were causally connected to its alleged participation in *the venture that trafficked her*—she alleges only that craigslist received fees for posts in those subcategories generally.   Notably, the FAC does not allege when craigslist began collecting fees for posts in these subcategories (*i.e.*, it does not allege that craigslist collected fees throughout the entirety of the 2007-2011 period in which Plaintiff was trafficked in hotels) and it fails to allege that anyone ever paid a fee to post advertisements of Plaintiff specifically.  *See* FAC ¶ 49.  And again, as explained above, Plaintiff never alleges that her traffickers actually conducted this transaction with craigslist (or indeed, any transaction at all).

Plaintiff's second theory is even more of a stretch.  The FAC alleges that craigslist "was able to 'cultivate[] an extensive user base through erotic services, as the section is Craigslist's most popular'"; that craigslist was "the ninth most popular website in the country" in 2007; and that craigslist's *overall* popularity led to increased revenue over time.  FAC ¶ 50.  But, yet again,

1   Plaintiff fails to connect any growth in "user base" to craigslist's alleged participation in *the*
2   *venture that trafficked her*.  It is implausible to infer that postings involving Plaintiff (and she does
3   not allege how many there were) had any material effect on the popularity of the "erotic services"
4   or "adult services" subsections or the craigslist website overall, such that craigslist derived any
5   sort of a tangible financial benefit from those posts.  And even if it were proper to conclude that
6   craigslist "knowingly benefitted from" the venture due to the aggregate financial impact of *all*
7   illegal trafficking activity that ever took place on the site—which, as discussed *supra* 16-18, it is
8   not—Plaintiff's allegations still do not plausibly allege that craigslist financially benefitted from
9   sex trafficking taken in the aggregate.  She alleges that craigslist made $1.03 billion in revenue in
10  2018 due to the site's overall "popularity" (FAC ¶ 50), but does not attempt to show that some
11  portion of that revenue is derived from illegal trafficking activity.  And while she alleges that in
12  2010, "advertisements for *commercial sex* brought in an estimated $36 million in revenue" (FAC
13  ¶ 2) (emphasis added), "commercial sex" is not the same thing as sexual trafficking of minors or
14  by force, which is what Section 1591 prohibits.

15  **III.    PLAINTIFF CANNOT STATE A BENEFICIARY CLAIM UNDER SECTION
16             1595 FOR ANY CONDUCT PRIOR TO DECEMBER 23, 2008**

17          For all the foregoing reasons, Plaintiff's TVPRA claim should be dismissed with prejudice
18  in its entirety.  But even if the Court finds that Plaintiff alleged sufficient facts to state a TVPRA
19  claim that is not barred by Section 230, the Court would still need to narrow the claim's temporal
20  scope.  Plaintiff alleges that she was trafficked "between 2007 and 2011."  FAC ¶¶ 1, 30.  To the
21  extent she seeks to hold craigslist liable for events prior to December 23, 2008—the effective date
22  of the TVPRA amendments creating financial beneficiary liability under Section 1595(a)—that
23  claim is barred because the amendments do not apply retroactively.  Two other courts in this circuit
24  have already so held.  *See M.L. v. craigslist, Inc.*, No. 3:19-cv-06153-BHS-TLF (W.D. Wash. Apr.
25  17, 2020), Dkt. 62 at 38-39, *R. & R. adopted* 2020 WL 5494903, at *8-9 (W.D. Wash. Sept. 11,
26  2020); *Owino v. CoreCivic, Inc.*, No. 17-cv-1112-JLS (NLS), 2018 WL 2193644, at *12-13 (S.D.
27  Cal. May 14, 2018).  Courts from other circuits are in accord.  *See Barrientos v. CoreCivic, Inc.*,

28

1    332 F. Supp. 3d 1305, 1312 (M.D. Ga. 2018); *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 521-23 &

2    n.12 (D. Md. 2014).

3          When Congress first enacted the TVPA in 2000, it did not include a private right of action.

4    *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat.

5    1464.   In 2003, Congress created Section 1595 to provide a private right of action against

6    *perpetrators* of sex traffickers—*i.e.*, those whose conduct violated Section 1591.  *See* Trafficking

7    Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat.

8    2875, 2878.  Congress did not add beneficiary liability to the provision, however, until it amended

9    Section 1595 in 2008.  *See* Trafficking Victims Protection Reauthorization Act of 2008, Pub. L.

10   No. 110-457, § 221, 122 Stat. 5044, 5067.

11         "The Supreme Court has recognized a 'time honored presumption [that] unless Congress

12   has clearly manifested its intent to the contrary,' 'the legal effect of conduct should ordinarily be

13   assessed under the law that existed when the conduct took place.'"  *Ditullio v. Boehm*, 662 F.3d

14   1091, 1099 (9th Cir. 2011) (quoting *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946

15   (1997)).  This rule against retroactive legislation "protects vital due process interests, ensuring that

16   individuals . . . have an opportunity to know what the law is before they act."  *Opati v. Rep. of

17   Sudan*, 140 S. Ct. 1601, 1607 (2020) (internal quotation marks and citation omitted).

18         The Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244, 268-80 (1994), sets

19   forth a three-step test for determining whether a statute should be given retroactive effect.  *See

20   also Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1187-88 (9th Cir. 2016) (explaining *Landgraf*

21   analysis).  At the first step, the court asks whether Congress "has expressly prescribed the statute's

22   proper [temporal] reach."  *Landgraf*, 511 U.S. at 280.  Here, the answer is no:  Congress did not

23   expressly state in the 2008 TVPRA amendments that the newly created beneficiary liability applies

24   to pre-enactment conduct.  *See generally* Pub. L. No. 110-457, 122 Stat. 5044.

25         At the second *Landgraf* step, the court evaluates whether the new statute "attaches new

26   legal consequences to events completed before its enactment."  511 U.S. at 269-70, 280.  If it does,

27   then applying the statute to pre-enactment conduct would have a "retroactive effect"—which is

28

1    impermissible unless the court determines (at the third *Landgraf* step) that Congress clearly so

2    intended. *Beaver*, 816 F.3d at 1187-88.

3         Here, the 2008 amendment clearly imposed new consequences for pre-enactment conduct.

4    The 2008 amendment expanded the scope of Section 1595 liability to conduct—benefitting

5    financially from a venture that the beneficiary should have known was engaged in sex trafficking—

6    that had not previously been unlawful. As the *Owino* court put it: "Before the 2008 amendments,

7    Defendant was not liable because the 'financial benefit' element cause of action did not exist.

8    After the amendments, Defendant is potentially liable.  Because Defendant is liable after the

9    amendment, but not liable before, the 2008 amendments create new legal consequences." 2018

10   WL 2193644, at *13; *see also M.L.*, 2020 WL 5494903, at *8-9 ("Retroactively applying the

11   amendment would subject defendants to increased liability not contemplated when they engaged

12   in the alleged conduct, amounting to an impermissible retroactive effect."); *Ditullio*, 662 F.3d at

13   1094 n.1 (holding that the creation of the original Section 1595 cause of action in the 2003 TVPRA

14   attached new legal consequences to conduct that Congress had not intended and could not be given

15   retroactive effect).  Plaintiff herself has previously explained that the 2008 TVPRA expanded the

16   scope of liability under Section 1595 to entities who "*are not themselves a perpetrator*." Dkt. 69

17   at 4-5 (emphasis in original); *see also* Apr. 9, 2020 Hrg. Tr. 39:12-16 (Dkt. 92) (Plaintiff's counsel

18   explaining that "[i]n 2008, Congress changed statute 1595 to broaden the category to whomever

19   businesses, craigslist or hospitality industry, or otherwise, receive benefit").

20        Finally, at the third *Landgraf* step, the court evaluates whether Congress nonetheless

21   clearly manifested an intent for the new statute to apply retroactively.  511 U.S. at 280; *see also*

22   *Beaver*, 816 F.3d at 1188 (explaining that at this step, "[w]e employ a presumption that Congress

23   did not intend for legislation to operate retroactively").  The *Owino* court correctly found that the

24   answer is no:  "[T]he amendments [to Section 1595 in the 2008 TVPRA] do not contain any clear

25   intent to apply retroactively."  2018 WL 2193644, at *13.  As a result, the beneficiary provision

26   cannot be applied to pre-enactment conduct.

27        Even if Plaintiff *could* show that Congress clearly meant to apply the beneficiary provision

28   retroactively, the expansion of liability to completed conduct would be unconstitutional as a

1  violation of due process.  Such retroactively liability would "contravene[] the bedrock due process

2  principle that the people should have fair notice of what conduct is prohibited."  *PHH Corp. v.*

3  *Consumer Fin. Prot. Bureau*, 839 F.3d 1, 46-48 (D.C. Cir. 2016) (Kavanaugh, J.), *reinstated in*

4  *relevant part on reh'g en banc*, 881 F.3d 75, 83 (D.C. Cir. 2018); *see also Opati*, 140 S. Ct. at

5  1609 ("[A]pplying new punishments to completed conduct can raise serious constitutional

6  questions.").

7      Because the beneficiary provision expanded the scope of liability under Section 1595, and

8  because Congress did not expressly provide for or manifest its intent to apply the 2008 amendment

9  retroactively, craigslist cannot be held liable for conduct prior to the 2008 TVPRA's effective date.

10                                    **CONCLUSION**

11      For the foregoing reasons, craigslist respectfully requests that the Court dismiss the

12  TVPRA claim against craigslist with prejudice.

13

14  Dated:  October 9, 2020                    LATHAM & WATKINS LLP

15                                    By */s/ Perry J. Viscounty*

16                                        Perry J. Viscounty

17                                        Attorneys for Defendant
                                         craigslist, Inc.

18

19

20

21

22

23

24

25

26

27

28