Carissa Phelps (Cal. Bar No. 264044)
cphelps@levinlaw.com
Kathryn L. Avila (*pro hac vice*)
kavila@levinlaw.com
Kimberly R. Lambert Adams (*pro hac vice*)
kadams@levinlaw.com
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERY & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: 850-435-7153
Facsimile: 850-436-6153

Kelly M. Dermody (Cal. Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (Cal. Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone: 415-956-1000
Facsimile: 415-956-1008

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff J.B.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J.B., | Case No. 4:19-cv-07848-HSG |
| Plaintiff, | **PLAINTIFF J.B.'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION** |
| v. | |
| G6 HOSPITALITY, LLC, *et al.*, | Judge:    Hon. Haywood S. Gilliam, Jr. |
| Defendant(s). | |

## MOTION AND MEMORANDUM IN SUPPORT

**I.    INTRODUCTION**

Pursuant to Local Rule 7-9(a), Plaintiff respectfully moves for leave to file a motion for reconsideration of the Court's August 20, 2020 Order Granting Motions to Dismiss. ECF No. 132 ("Order"). Specifically, Plaintiff seeks reconsideration of the portion of the Order finding that Defendant Craigslist qualifies for immunity under Communications Decency Act Section 230(c) and dismissing Plaintiff's state law claims against Craigslist without leave to amend. Order at 6-11. Reconsideration briefing is warranted for at least two reasons.

First, the Supreme Court recently confirmed that the originally intended scope of Section 230 is "a far cry from what has prevailed in court," and implored lower courts to stop "reading extra immunity into statutes where it does not belong." *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, No. 19-1284, 2020 WL 6037214, at *2 (Oct. 13, 2020). The *Malwarebytes* guidance is particularly applicable here, because Justice Thomas specifically noted a case that is materially similar to this one as a problematic extension of Section 230 immunity. *Id*. at *4.

Second, this Court issued the Order without fulsome briefing and then dismissed Plaintiff's state law claims without leave to amend, meaning the Court has not yet considered whether the allegations in Plaintiff's First Amended Complaint ("FAC") are sufficient to warrant discovery on whether Craigslist was, in fact, an "information content provider" within the meaning of Section 230. The only court to consider whether Section 230 immunity applies to Craigslist's sex trafficking content on a full record concluded (after this challenged Order was issued) that Craigslist was plausibly "a content creator and not merely a publisher of third-party content," and therefore not immune from either state or federal anti-trafficking claims on a motion to dismiss. *M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 5494903, at *4 (W.D. Wash. Sept. 11, 2020).

Accordingly, Plaintiff respectfully requests that the Court grant this motion for leave and permit Plaintiff to file a motion for reconsideration, through which the parties can fully brief this issue in light of recent authority and Plaintiff's amended factual allegations.

## II. BACKGROUND

On August 20, 2020, the Court granted Craigslist's motion to dismiss Plaintiff's state and federal sex trafficking claims, as alleged in Plaintiff's original complaint. Order at 11, 15. With respect to Plaintiff's state law claims (the subject of this motion for leave), the Court first determined that Craigslist satisfied the three-prong test for immunity set forth in *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019), *id*. at 5-6, and then determined that Craigslist was not "an information content provider" within the meaning of Section 230(f), *id*. at 10-11.[1] Regarding the question of content creation, the Court noted that "Plaintiff has pled no facts to support this argument," but nevertheless dismissed Plaintiff's state law claims without granting leave to amend her complaint with further factual support for this argument. *Id*. at 11.

On September 17, 2020, Plaintiff filed the operative FAC pursuant to the Court's order granting Plaintiff leave to re-plead her federal sex-trafficking claims against Craigslist, and federal and state sex-trafficking claims against the Hotel Defendants. Order at 18-19. As relevant here, the FAC includes new factual allegations regarding Craigslist's creation, maintenance, and protection of the sex-trafficking content on its platform. FAC ¶¶ 40-45. Among other things, Plaintiff now alleges that Craigslist intentionally designed its "Erotic" and "Adult" services categories to make advertisements for commercial sex as easy to locate as possible, including by developing an interface, button selections (such as "w4m" meaning "woman for man"), search feature (where one could enter terms such as "young and fresh," "virgin," "new girl," and "new to Craigslist," which were code for "minor"), and photo upload feature (permitting a specific number of photographs to appear per sexual advertisement), that invited buyers of commercial sex to locate victims on the platform. *Id*. ¶¶ 41-42. Plaintiff also alleges that in response to pressure from law enforcement, Craigslist renamed this platform several times, but otherwise refused to take any steps to identify, reduce, or eliminate sex-

---

[1] The Court also concluded that state civil anti-trafficking claims are not exempted from Section 230 immunity under Section 230(e), pursuant to the Fight Online Sex Trafficking Act ("FOSTA"). Order at 6-10. While Plaintiff respectfully disagrees with the Court's analysis, Plaintiff does not seek leave to file a motion for reconsideration of that portion of the Court's ruling, as the post-Order legal authority and factual allegations bear only upon whether Section 230 immunity applies to Craigslist at all (*i.e.*, not to the question of FOSTA exemption).

trafficking on the platform. *Id.* ¶¶ 43-44. Advocacy groups referred to these as "cosmetic changes" that illustrated Craigslist was not at all "outraged and disturbed that their site is the primary way children are bought in the country." *Id.*

To the contrary, Craigslist took steps to *protect* the "Erotic" and "Adult" categories from outside interference—be it from law enforcement or competitors. FAC ¶ 44. For example, Craigslist protected the anonymity of the traffickers by permitting commercial sex sellers and buyers to communicate anonymously within the Craigslist system. *Id.* Because Craigslist controlled this communication system, the identities of victims and purchasers were hidden not only from public view, but also from law enforcement and other agencies who were working to locate children being sold *specifically on* Craigslist. *Id.* Craigslist certainly had the ability to identify and monitor users of the "Erotic" and "Adult" categories if it wanted to; it only did so, however, when it suited Craigslist's business interests. For example, Craigslist blocked access to a visual search company called Listpic, in part because of the other company's attempt to pull and organize the images posted on the "Erotic Services" section. *Id.* In other words, Craigslist not only hosted this content, Craigslist actively protected it.

Plaintiff also now alleges that Craigslist repeatedly fought to own and control the content of the advertisements—including those for sex—that appeared on its platform. FAC ¶ 45. During the years Plaintiff was trafficked on the Craigslist platform, Craigslist "repeatedly stifled other web developers' efforts to build on top of its data" with the purpose of "keeping online ads available *only* on its website." *Id.* And in 2012, Craigslist went so far as to bring copyright infringement claims over the advertisements posted on its website, asserting its ownership over the content and undercutting any claim that Craigslist was merely a host for this material. *Id.*

These efforts were successful: in 2010 alone, Craigslist derived an estimated $36 million in revenue on sex trafficking advertisements, which drove a 22 percent increase in Craigslist's overall revenues between 2009 and 2010. FAC ¶ 45. It is unsurprising, then, that Craigslist was publicly identified that same year—one of the years Plaintiff was trafficked on Craigslist—as "the Wal-Mart for sex trafficking and crimes, where the majority of online ads are placed for prostitution of women and children." *Id.* ¶ 35.

### III. LEGAL STANDARD

Local Rule 7-9(b) authorizes a party to seek reconsideration on any of the following bases:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Additionally, "[a] district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law." *In re Intuitive Surgical Sec. Litig.*, No. 13-01920, 2014 WL 7146215, at *2 (N.D. Cal. Dec. 15, 2014) (quoting *Abada v. Charles Schwab & Co., Inc.,* 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000)). *See also City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider . . . or modify an interlocutory order for cause seen by it to be sufficient.") (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir.1981)); *City of San Jose v. Monsanto Co.*, No. 5:15-CV-03178-EJD, 2017 WL 6039670, at *1 (N.D. Cal. Dec. 6, 2017) (noting that if a party "disagree[s] with the Court's application of the law to the facts, the proper vehicle is a motion for reconsideration").

### IV. ARGUMENT

Very recent authority from the Supreme Court supports the conclusion that Section 230 immunity does not apply to Craigslist here. Recent lower court authority *specifically regarding Craigslist* likewise confirms that, were the Court to accept full briefing and consider Plaintiff's amended allegations, it should determine that immunity is inappropriate here.

In *Malwarebytes*, issued less than one month ago, Justice Thomas cautioned lower courts to stop relying on Section 230 to grant website companies broad immunity from liability for

unlawful conduct occurring on their platforms. Justice Thomas explained that Section 230 was enacted "against specific background legal principles," including laws distinguishing between "publishers or speakers (like newspapers) and distributors (like newsstands and libraries)." 2020 WL 6037214, at *1. Specifically, Section 230 was intended to clarify "that if a company unknowingly leaves up illegal third-party content, it is protected from publisher liability by §230(c)(1); and if it takes down certain third-party content in good faith, it is protected by §230(c)(2)(A)." *Id*. at *2.[2]

Unfortunately, this "modest understanding is a far cry from what has prevailed in court," because lower courts have read "extra immunity" into Section 230 "where it does not belong." 2020 WL 6037214, at *2. Justice Thomas specifically noted a case quite similar to this one— where the company "tailored its posting requirements to make sex trafficking easier, accepted anonymous payments, failed to verify e-mails, and stripped metadata from photographs to make crimes harder to track"—as a problematic extension of Section 230 immunity. *Id*. at *4 (internal quotation marks omitted). Here, Plaintiff offers materially identical allegations, including that, "Craigslist designed its platform to make advertisements for commercial sex as easy to locate as possible," FAC ¶ 41, "protected the anonymity of the traffickers by permitting commercial sex sellers and buyers to communicate anonymously within the Craigslist system," *id*. ¶ 44, and hid "the location and identities of victims and purchasers . . . not only from public view, but also from law enforcement and other agencies who were working to prevent and eliminate sex trafficking," *id*. In addition, Craigslist did *even more*, here, to assert control over the content on its platform than in the case to which Justice Thomas referred: Craigslist also *actively fought* to own the content of the advertisements on its platform, including those for sex, through blocking access to

---

[2] Justice Thomas is correct: the original purpose of Section 230 was to *incentivize* internet companies to play an active role preventing the sexual exploitation of children, not to *immunize* them for a failure to do so. Section 230 was enacted as a "Good Samaritan" provision, to protect internet companies that "make a good faith effort to edit the smut from their systems." 41 Cong. Rec. H8460, H8471-72 (1995). It was only ever intended to protect websites from defamation lawsuits simply for exercising editorial control over the content on their sites, and was indeed passed to address precisely those cases. *See* H.R. Rep. 104-458 (1996) ("One of the specific purposes of this section is to overrule . . . decisions which have treated such providers and users as publishers or speakers of content that is not their own because they have restricted access to objectionable material.").

1    images on the "Erotic" services platform to a competitor image aggregator, and by suing for

2    copyright infringement over the content of advertisements posted on its website. *Id.* ¶ 45.

3          To the extent this Court finds Justice Thomas's warning instructive, then, it would be

4    difficult to argue that it does not apply to this case. Here, as there, immunity should not apply

5    because in each instance the plaintiff sought to hold the website to account for its "own

6    misconduct." 2020 WL 6037214, at *5. In fact, after this Court's dismissal Order was issued,

7    another court within this Circuit considered whether Craigslist exercised sufficient control over

8    the sex-trafficking advertisements on its platform to fall outside the scope of Section 230

9    immunity, and concluded that the plaintiff (a survivor) had alleged sufficient allegations to

10   survive a motion to dismiss on this issue. In *M.L. v. craigslist Inc.*, the court concluded that the

11   plaintiff had sufficiently alleged Craigslist is a "content provider" with respect to its sex

12   trafficking categories, such that Craigslist could not assert Section 230 immunity on a motion to

13   dismiss. No. C19-6153 BHS-TLF, 2020 WL 5494903, at *4 (W.D. Wash. Sept. 11, 2020). After

14   an extensive discussion of the standard for Section 230 immunity, the court concluded that

15   Section 230(c) does *not* bar state law claims against Craigslist because Craigslist "was a content

16   creator and not merely a publisher of third-party content." *Id*.

17         Here, reconsideration is warranted not only by this subsequent authority but also because

18   the Court issued its dismissal Order without the benefit of robust briefing on this issue.[3]

19   Moreover, despite concluding that Plaintiff "pled no facts to support" the argument that Craigslist

20   does not satisfy the Section 230 immunity criteria, and despite granting Plaintiff leave to amend

21   with respect to her federal claims against Craigslist, the Court nevertheless dismissed Plaintiff's

22   state law claims against Craigslist without leave to amend. Order at 11. But Plaintiff's amended

23   allegations extend far beyond those found to be sufficient in *M.L.*, and Plaintiff respectfully

24   submits that the Court and parties would benefit from further briefing—through a motion for

25   reconsideration—about how those allegations square with post-Order Supreme Court and lower

---

[3] *See* ECF No. 86 at 4, n.9 (Plaintiff stating that she "remains confident that Section 230 immunity simply does not apply here," but that if the Court were going to consider application of the Section 230 criteria at all, "then [she] respectfully requests an opportunity to provide more fulsome briefing on why the Section 230 criteria also are not met here").

court authority as well as pre-Order Ninth Circuit authority on the scope of Section 230 immunity.

Finally, as Justice Thomas observed in *Malwarebytes*: "Paring back the sweeping immunity courts have read into §230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place. Plaintiffs still must prove the merits of their cases, and some claims will undoubtedly fail." 2020 WL 6037214, at *5. Plaintiff respectfully submits that the Court should at least entertain complete briefing on whether Plaintiff's new allegations warrant *just discovery* into whether Craigslist can properly assert immunity here. *See M.L.*, 2020 WL 5494903, at *4 (granting plaintiff "the opportunity to conduct discovery as to whether craigslist did materially contribute to the unlawful third-party content" alleged in her complaint).

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion for leave and permit Plaintiff to file a motion for reconsideration.

Dated: November 9, 2020        Respectfully submitted,

By: /s/ *Kelly M. Dermody*

    Kelly M. Dermody (Cal. Bar No. 171716)
    kdermody@lchb.com
    Michelle A. Lamy (Cal. Bar No. 308174)
    mlamy@lchb.com
    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
    San Francisco, CA  94111
    Telephone: 415-956-1000
    Facsimile: 415-956-1008

    Annika K. Martin (*pro hac vice*)
    akmartin@lchb.com
    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    250 Hudson Street, 8th Floor
    New York, NY  10013
    Telephone: 212-355-9500
    Facsimile: 212-355-9592

| | |
|---|---|
| 1 | Carissa Phelps (Cal. Bar No. 264044) |
| | cphelps@levinlaw.com |
| 2 | Kathryn L. Avila (*pro hac vice*) |
| | kavila@levinlaw.com |
| 3 | Kimberly R. Lambert Adams (*pro hac vice*) |
| | kadams@levinlaw.com |
| 4 | LEVIN, PAPANTONIO, THOMAS, |
| | MITCHELL, RAFFERY & PROCTOR, P.A. |
| 5 | 316 S. Baylen Street, Suite 600 |
| | Pensacola, Florida 32502 |
| 6 | Telephone: 850-435-7153 |
| | Facsimile: 850-436-6153 |
| 7 | |
| 8 | *Attorneys for Plaintiff J.B.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who receives CM/ECF notification.

DATED this 9th day of November 2020.   By:   /s/ *Kelly M. Dermody*
                                                Kelly M. Dermody

2055777.3 -9- PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
4:19-CV-07848-HSG